**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 94-60342

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOEL GONZALEZ and JOSE FRANCISCO GOMEZ,

Defendants -Appellants.

Appeal from the United States District Court
for the Southern District of Texas

February 22, 1996

Before KING, DeMOSS and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

The opinion filed in this case on January 26, 1996, __ F.3d __, is withdrawn and the following opinion is substituted:

THE CASE

On July 7, 1993, a grand jury returned a superseding indictment charging Joel Gonzalez ("Gonzalez") and Jose Francisco Gomez ("Gomez"), along with ten co-defendants, with multiple counts of federal drug crimes. The superseding indictment charged Gonzalez in counts one through six with conspiracy to possess with the intent to distribute marijuana, two counts of possession with the intent to distribute more than 1,000 kilograms of marijuana, and three money-laundering counts, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and 18 U.S.C. § 1956(a)(1)(A)(I), respectively. The superseding indictment charged Gomez in those same counts except for counts two and six.

On September 9, 1993, the district court ordered a severance and tried Gonzalez, Gomez, and a third man apart from the other defendants. The trial was held in January 1994. The jury found Gonzalez guilty of counts one, two, three, and six and Gomez of counts one and three.

On May 2, 1994, the district court sentenced Gonzalez to four concurrent 235-month terms of incarceration, three concurrent five-year terms of supervised release, one concurrent three-year term of supervised release, a $200 special assessment, and a $10,000 fine. Prior to the sentencing hearing, Gonzalez filed an objection to the Presentence Investigation Report ("PSR") complaining that the imposition of the criminal sentence violated the double jeopardy and excessive fine clauses of the Constitution.

The court sentenced Gomez on June 16, 1994, to 168 months of imprisonment followed by a supervised release term of five years and charged a $5,000 fine.

After the district court entered judgments, both Gonzalez and Gomez timely appealed.

DISCUSSION

Standard of Review

We review the district court's denial of a motion to dismiss an indictment on double jeopardy grounds de novo and accept the underlying factual findings of the district court unless clearly erroneous. United States v. Botello, 991 F.2d 189, 192 (5th Cir. 1993), cert. denied, 114 S. Ct. 886, 127 L. Ed. 2d 80 (1994); United States v. DeShaw, 974 F.2d 667, 669 (5th Cir. 1992).

Gonzalez

Gonzalez contends that the district court erred in overruling his objection to the presentence investigation report, which asserted a double jeopardy violation due to a prior civil forfeiture proceeding. He says that because the government sought civil forfeiture in a separate indictment, the Double Jeopardy Clause of the Constitution barred subsequent punishment in the criminal prosecution. He thus contends that he is being punished twice for the same conduct.[1]

_____

The order of the civil and criminal proceedings does not matter to the analysis. The Double Jeopardy Clause prohibits the second sanction if both the first and second sanctions are deemed punishment. United States v. Sanchez-Escareno, 950 F.2d 193, 200 (5th Cir. 1991), cert. denied,

At the time of Gonzalez's arrest, the government seized approximately $70,000 worth of vehicles and personal property. Civil forfeiture ensued and, by agreement dated October 14, 1992, the government forfeited $34,344 worth of that property, consisting of three vehicles, cash, furs, and a cost bond. The government released the balance - jewelry and a boat. Testimony at sentencing established that towing and storage fees for the vehicles cost the government about $800.

Double Jeopardy

It is well established that the appellant must make a threshold showing of "punishment" before a court undertakes a double jeopardy analysis. United States v. Morgan, 51 F.3d 1105, 1115 (2nd Cir. 1995). Here Gonzalez has the burden of designating and creating the record on appeal to provide all relevant evidence to support his argument. Fed. R. App. P. 10(b)(2), 11(a); United States v. Coveney, 995 F.2d 578, 587 (5th Cir. 1993). If he fails to provide the necessary record for review, we need not consider the issue on appeal. See Powell v. Estelle, 959 F.2d 22, 26 (5th Cir.), cert. denied, 113 S. Ct. 668 (1992) (stating that because the appellants failed to provide transcript of hearing upon which an appellate issue was based, the court would not consider it).

Did Jeopardy Attach?

In Gonzalez's case, the civil forfeiture proceeding was settled by a consent judgment. We first must consider whether the consent judgment in the forfeiture proceeding was an adjudication for double jeopardy purposes. The Sixth Circuit has held that jeopardy attaches when a judgment of forfeiture is entered pursuant to a settlement. United States v. Ursery, 59 F.3d 568, 571 (6th Cir. 1995). The Sixth Circuit held that Ursery's consent judgment in his civil forfeiture action was "analogous to a guilty plea entered pursuant to a plea agreement in a criminal case." Id. at 571 (citing, inter alia, United States v. Kim, 884 F.2d 189, 191 (5th Cir. 1989); Fransaw v. Lynaugh, 810 F.2d 518, 523 & n.9 (5th Cir.), cert. denied, 483 U.S. 1008 (1987)). "[T]he fact that there has been no trial in a civil forfeiture proceeding does not preclude the attachment of jeopardy to a forfeiture judgment," because "[j]eopardy attaches in a nontrial forfeiture proceeding when the court accepts

113 S. Ct. 123 (1992).

3

the stipulation of forfeiture and enters the judgment of forfeiture." Id. at 572. The defendant must be a party to the forfeiture proceeding for jeopardy to attach. Otherwi se he was never at risk of having a forfeiture judgment entered against him. United States v. Torres, 28 F.3d 1463, 1465 (7th Cir.), cert. denied, 115 S. Ct. 669 (1994). There is no such problem here. Gonzalez was indisputably a party to the proceeding. The weight of the authority prompts us to treat Gonzalez's settlement just as we would a guilty plea. Consequently, jeopardy attached upon acceptance of the settlement agreement.

Analysis

"No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . ." U.S. Co nst. amend. V. The Constitution contemplates three types of double jeopardy: "a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." United States v. Halper, 490 U.S. 435, 440 (1989). The Supreme Court in Halper took up the question of "whether and under what circumstances a civil penalty may constitute punishment for the purpose of the Double Jeopardy Clause." Id. at 446. The Court resolved that a civil sanction is punishment if it serves the twin aims of retribution and deterrence and not the remedial goal of compensating the government. Id. at 448-49.

In Halper, the Supreme Court established an analytical methodology for determining whether a civil forfeiture is punishment. 490 U.S. at 449. If the purpose of a civil sanction is to make the government whole by reimbursing it for the costs incurred as a result of the unlawful conduct, then the civil forfeiture is remedial, and, by definition, nonpunitive. Id. A civil sanction therefore constitutes punishment only if the amount of the sanction is overwhelmingly disproportionate to the costs borne by the government and society as a result of the wrongful conduct. Id.

Although Halper created a proportionality review, subsequent cases have concluded that whether a civil forfeiture of property is punishment depends upon the nature of the property forfeited. A civil forfeiture brought under § 881(a)(4) (conveyances, such as means of transporting drugs) or

4

§ 881(a)(7) (drug-related real estate) always constitutes punishment because the large and unpredictable variances in the value of conveyances and real estate can have no correlation to the costs incurred by the government and society as a result of the illegal drug trafficking for which the property is forfeited. United States v. Tilley, 18 F.3d 295, 299-300 (5th Cir.) (citing Austin v. United States, 113 S. Ct. 2801, 2803 (1993)), cert. denied, 115 S. Ct. 574 (1994).

On the other hand, a civil forfeiture of drug proceeds brought under § 881(a)(6) is never punishment. Tilley, 18 F.3d at 300; see United States v. Fields, 72 F.3d 1200, 1209 (5th Cir. 1996) (recognizing that we held in Tilley "that the forfeiture of proceeds from illegal drug sales pursuant to 21 U.S.C. § 881(a)(6) does not constitute punishment."). In Tilley, we began our analysis by conducting a Halper case-by-case proportionality comparison of the value of the property forfeited to the governmental and societal damages caused by the unlawful conduct. Tilley, 18 F.3d at 299. However, we concluded that the forfeiture of drug proceeds under § 881(a)(6) will always be proportional to the governmental and societal costs: "[T]he forfeiture of drug proceeds will always be directly proportional to the amount of drugs sold. The more drugs sold, the more proceeds that will be forfeited. As we have held, these proceeds are roughly proportional to the harm inflicted upon government and society by the drug sale." Id. at 300; see also United States v. Perez, 70 F.3d 345, 349 (5th Cir. 1995).

For Tilley to apply, it must be established that the forfeiture in this case concerned drug proceeds, as defined in § 881(a)(6).[2] Whether the $34,344 in forfeited property was the fruit of illicit gains through drug trafficking is a question we cannot resolve on the basis of the current record. We

_____

2 Section 881(a)(6) provides in relevant part:

    (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
        (6) all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter . . . .

21 U.S.C. § 881(a)(6).

need to know whether Gonzalez's property is drug proceeds forfeited under § 881(a)(6) to determine whether the civil sanction is remedial and per se not punishment under United States v. Tilley, 18 F.3d 295 (5th Cir. 1994). If instead Gonzalez's property constitutes conveyances forfeited under § 881(a)(4), or property forfeited under some other subsection of § 881, then the civil sanction may be punishment per se under Austin v. United States, 113 S. Ct. 2801 (1993). We therefore remand to the district court for a determination of the circumstances of Gonzalez's civil forfeiture and the nature of the property forfeited.[3]

Gomez

Gomez also contends that the government violated his double jeopardy rights by successively pursuing civil forfeiture and a separate criminal prosecution. He admits, however, that he did not raise this issue specifically in the district court and that it therefore should be reviewed for plain error. The government seized $74,000 worth of vehicles and rugs, as well as $449,000 worth of other assets. As of the date of sentencing, the civil forfeiture proceeding was still pending due to settlement negotiations.

Gomez's double jeopardy claim is readily dispatched. The civil forfeiture proceeding was still pending at the time of sentencing. Thus, jeopardy had not attached because neither final administrative action nor other adjudication of civil liability had occurred prior to Gomez's criminal conviction. United States v. Park, 951 F.2d 634, 636 (5th Cir. 1992). We therefore affirm as to Gomez on this issue.

Adjustment for Role as Leader/Organizer

Gonzalez also objected timely to the attribution of a four level increase to his score under the

---

3 Upon remand, it is incumbent upon the government to establish by a preponderance of the evidence that the forfeited property constitutes drug proceeds either by proving the essential factual elements of 21 U.S.C. § 881(a)(6), or by obtaining a stipulation to that effect from the defendant. The mere fact that the government labels the property as "drug proceeds" is not sufficient. Cf. United States v. Atkins, 834 F.2d 426, 434 (5th Cir. 1987); United States v. Stricklin, 591 F.2d 1112, 1117 (5th Cir.) (holding that once the defendant has demonstrated a prima facie nonfrivolous double jeopardy claim, the government carries the burden of establishing that the indictments charge separate crimes), cert. denied, 444 U.S. 963 (1979).

6

Sentencing Guidelines as a leader or organizer pursuant to § 3B1.1(a). Specifically, he contends that the adjustment was "inappropriate because there were not five or more participants involved" and the evidence indicated that he was only a transporter.

"If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive," the offense level is to be increased by four levels. U.S.S.G. § 3B1.1(a). To qualify for this upward adjustment, the defendant must have been the organizer or leader of at least one of the other participants. Id., cmt. No. 2.

Seven factors should be considered in making a leadership finding: "(1) the exercise of decision-making authority; (2) the nature of participation in the commission of the offense; (3) the recruitment of accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning or organizing the offense; (6) the nature and scope of the illegal activity; and (7) the degree of control and authority exercised over others." United States v. Barreto, 871 F.2d 511, 512 (5th Cir. 1989) (citing U.S.S.G. § 3B1.1, cmt. No. 3). We can deduce inferentially the defendant's role in criminal activity for the purposes of § 3B1.1 from available facts. United States v. Manthei, 913 F.2d 1130, 1135 (5th Cir. 1990).

A reviewing court will not disturb a district court's factual findings regarding a defendant's role in a criminal activity unless those findings are clearly erroneous. Barreto, 871 F.2d at 512. A factual finding is not clearly erroneous if it is plausible in light of the record read as a whole. United States v. Watson, 966 F.2d 161, 162 (5th Cir. 1992). There was no clear error. The evidence from the trial and the information contained in the Presentence Investigation Report ("PSR") establish that Gonzalez was a leader or organizer of the criminal activity alleged.

The charges against Gonzalez, Gomez, and their cohorts resulted from an investigation conducted by the Texas Department of Public Safety ("DPS") and the FBI. These agencies acted on information from a cooperating individual ("CI") concerning the transportation of two shipments of marijuana from the Laredo, Texas, area to Dallas and San Antonio. The CI offered law enforcement agents his help in apprehending a group of suspected drug traffickers. To that end he infiltrated the

group and secretly recorded a planning meeting at the home of Aureliano Salinas, Sr., in November 1991. According to the PSR the defendants arranged for the CI to move over 3,000 pounds of marijuana from the Laredo area to Tynan, Texas, on November 5. The CI turned the load truck over to another driver, Victor Leal, outside of San Antonio. Leal completed the trip into the San Antonio area, where the drugs were unloaded on private property and ultimately seized by agents. Neither Gonzalez nor Gomez were arrested for this shipment.

Roughly a month later, the CI, still working undercover, approached Aureliano Salinas, Jr., in Zapata, Texas, to try to collect payment for his role in transporting the November 5 shipment. On December 17, 1991, Salinas, Jr., took the CI to Laredo, Texas, to meet Jose Gonzalez (also known as "Red") at Gonzalez's place of business, Redco Motors. On January 2, 1992, the CI again met with Gonzalez, who then told the CI that he would be responsible for the debt the Salinas family owed him for his services during the failed November 5 load.

The CI testified that Gonzalez told him he had 1,000 pounds of marijuana in Dallas that he wanted to sell. Gonzalez also ordered the CI to provide the truck, driver, and land for crossing the border and to make a call from a pay phone at a mall. The CI testified to taking other direction from Gonzalez and to knowing of other participants in the scheme who likewise took orders from Gonzalez. We are convinced that Gonzalez had decision-making authority in connection with the payment of expenses and assignment of roles for the conspirators. The district court did not err in adjusting Gonzalez's sentence as a leader/organizer.

Gomez also contends that the district court erred by according him a two-level adjustment for a leadership role. Gomez raised this objection prior to sentencing and reargued it at sentencing. The district court then adopted the PSR's recommendation and overruled the objection.

Because the PSR has sufficient indicia of reliability to support its probable accuracy, it may be considered as evidence by the trial court at sentencing. United States v. Lghodaro, 967 F.2d 1028, 1030 (5th Cir. 1992). The PSR assigned a two-level increase based on Gomez's role. The PSR indicated that Gomez was an associate of Gonzalez's who was present during negotiations regarding

8

the sale of marijuana involved in the first load and was also present in Dallas before the arrival of the second load. He also participated in planning the second shipment. Trial testimony established that Gomez used his cellular phone to report that the second load of marijuana was ready to move and also gave the CI expense money and instructions. Gomez has not demonstrated that the information in the PSR and developed at sentencing was materially unreliable. See United States v. Rodriguez, 897 F.2d 1324, 1328 (5th Cir. 1990). The district court did not clearly err in this regard. See United States v. Mir, 919 F.2d 940, 943 (5th Cir. 1990).

Sufficiency of the Evidence Regarding Conspiracy and Possession Counts Against Gomez

In a drug conspiracy prosecution, the Government must prove beyond a reasonable doubt: (1) the existence of an agreement between two or more persons to violate narcotics law; (2) the defendant's knowledge of the agreement; and (3) the defendant's voluntary participation in the agreement. United States v. Maltos, 985 F.2d 743, 746 (5th Cir. 1992).

The standard of review for a challenge to the sufficiency of the evidence is whether a reasonable trier of fact could have found that the evidence established the defendant's guilt beyond a reasonable doubt. United States v. Stephens, 964 F.2d 424, 427 n.8 (5th Cir. 1992). We review the evidence in the light most favorable to the jury's verdict, making all reasonable inferences and credibility choices in favor of that verdict. The evidence need not exclude every reasonable hypothesis of innocence, nor be completely inconsistent with every possible conclusion except that of guilt. The jury may choose among reasonable constructions of the evidence. United States v. Rodriguez, 15 F.3d 408, 411-12 (5th Cir. 1994).

The CI's testimony sufficiently established Gomez's guilt on both counts. The CI testified to the following. Gonzalez referred to Gomez as his associate. Both Gomez and Gonzalez met the CI at a mall on January 15, 1992, to discuss obtaining a truck to transport marijuana. Gomez gave the CI $3,000 during the meeting to purchase a truck. On January 16, 1992, the CI met Gomez and Gonzalez at a restaurant in Laredo, Texas, and went with them to a mall where Gomez called an unknown individual by cellular phone and stated that the truck was ready and that "everything will

9

be rolling in the morning." At a Motel Six, an unknown individual came to the CI's room and informed the CI that Gomez and Gonzalez wished to see the CI. The CI then met with Gonzalez and Gomez and discussed the logistics of transporting of marijuana, including expenses, fuel, and the route to be taken to the Dallas area. Gomez gave the CI an additional $1,000 and instructed him to "go back to [his motel] room and wait."

The jury could reasonably have inferred the existence of an agreement between two or more persons to transport marijuana, that Gomez had knowledge of the agreement, and that Gomez voluntarily participated in the agreement. See Maltos, 985 F.2d at 746. Because the evidence was sufficient to support Gomez's conspiracy conviction, he is criminally responsible for all foreseeable substantive offenses involved in that conspiracy which, in this case, included possession with intent to distribute marijuana. See United States v. Basey, 816 F.2d 980, 997 (5th Cir. 1987). Because the jury could reasonably infer that Gomez was involved in the organization and logistical aspects of transporting the marijuana, the evidence is sufficient to establish his culpability regarding the possession conviction. Id.

Attribution of Marijuana in Gomez's Sentencing

Gomez says the district court erred when it attributed to him the amount of marijuana involved in the November 5, 1991, load for sentencing purposes. The testimony at sentencing established that Gomez was involved in the November 5 load. The PSR also indicates that Gomez was involved in that scheme. Given the scope of the conspiracy and Gomez's role in it, as well as Gomez's failure to present any evidence rebutting the PSR and sentencing testimony, the district court's determination that he was responsible for the November 5, 1991, load is not clearly erroneous. See Mir, 919 F.2d at 943.

Evidence of Gomez's Involvement in Other Drug Transactions

Gomez also contends that the district court abused its discretion by admitting evidence, pursuant to Federal Rule of Evidence 404(b), regarding Gomez's involvement in other marijuana-transportation activities. Specifically, he contends that the district court's admission of testimony of

10

Baldemer Lopes-DeLeon regarding Gomez's purported agreement with DeLeon to transport marijuana after the two shipments involved in the underlying convictions, was unduly prejudicial. He claims that the evidence was too tenuous to prove his involvement and that the district court's admission of the Rule 404(b) evidence was not harmless.

We review a district court's decision to admit Rule 404(b) evidence for abuse of discretion. United States v. Bentley-Smith, 2 F.3d 1368, 1377 (5th Cir. 1993). Our review is "necessarily heightened" in criminal cases. Id.

Rule 404(b) precludes the admission of evidence "of other crimes, wrongdoings, or acts . . . to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." This court has established a two-part test to determine the admissibility of Rule 404(b) evidence. See United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978) (en banc), cert. denied, 440 U.S. 920 (1979). The extrinsic-offense evidence must be relevant to an issue other than the defendant's character, must possess probative value which is not outweighed by undue prejudice, and must satisfy the other requirements of Federal Rule of Evidence 402. Bentley-Smith, 2 F.3d at 1377 & n.11.

In a conspiracy case, the entry of a not-guilty plea raises the issue of intent sufficiently to justify the admission of Rule 404(b) evidence. United States v. Prati, 861 F.2d 82, 86 (5th Cir. 1988). The government offered the testimony of a witness concerning separate marijuana trafficking deals with Gomez. The testimony related conduct by Gomez that was very similar to the allegations of the trafficking scheme underlying this case: the movement of marijuana from Laredo to San Antonio and Dallas in a white Suburban and the use of an alias by Gomez.

The district court conducted a Beechum analysis and held the evidence relevant to Gomez's intent and knowledge and that its admission would not "cause confusion or undue delay or waste of time and, therefore, that the value of it would outweigh any danger, unfair prejudice or confusion." The district court then gave the jury a limiting instruction, instructing the jury that the Rule 404(b)

11

evidence was admitted

> for the limited purpose of deciding whether Mr. Gomez ha[d] the required criminal knowledge and intent.  In other words, you (the jury) first have to find from the other evidence in the case whether you think Mr. Gomez did anything.  Was he even there, was he even in the Motel Six.  Was he even in the truck at the mall.  Did any of those events ever happen, in the first place.
>
> Now, if you don't believe that ever happened, well, that's the end of it.  But if you do believe that they happened, that he was there meeting with Gonzalez and Perez and perhaps some other strangers and all that business that Perez was talking about, if you believe those things were happening, then you have to decide, was that just innocent, was he just in the wrong place at the wrong time, or was he a knowing and willful participant in a marijuana scheme.  And for that limited purpose, of deciding his knowledge and intent, then you can consider the testimony of Mr. Lopes-DeLeon, who says that a few months later, he and Mr. Gomez engaged in a similar kind of conduct, namely, the conduct of transporting some marijuana loads from Laredo to points north.  So you can only consider that on Gomez and you can only consider that for that limited purpose.

The district court further instructed the jury that they could not consider the Rule 404(b) evidence to establish that Gomez was "a bad fellow" and that they could use the evidence only "for the limited purpose of [establishing Gomez's knowledge and intent and only if you first believe that he actually was at those places where Perez puts him, . . . was he there for an innocent purpose or criminal purpose, then you can look at this testimony."  Thus, the danger of unfair prejudice was minimized by the district court's careful instructions to the jury.  United States v. Willis, 6 F.3d 257, 262-63 (5th Cir. 1993).  Gomez has shown no error in this regard.  The district court did not abuse its discretion in admitting the Rule 404(b) evidence.  Bentley-Smith, 2 F.3d at 1377.

CONCLUSION

For the foregoing reasons, we AFFIRM the conviction and sentence as to Gomez.  We VACATE the conviction and sentence as to Gonzales and REMAND the case for determination of the double jeopardy issue in accordance with this opinion.