United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 30, 2005**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

————————

No. 04-40660

————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MIGUEL ANGEL POMPA; JOSÉ FELICIANO POMPA;
BALTAZAR BAZAN,

Defendants-Appellants.

Appeals from the United States District Court
For the Southern District of Texas

Before REAVLEY, HIGGINBOTHAM, and GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

This appeal arises from the conviction of the three appellants, Miguel Angel Pompa, José Feliciano Pompa (collectively, "the Pompas"), and Baltazar Bazan ("Bazan") on charges of conspiring to possess marijuana with intent to distribute, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B), and possession of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2. Appellants challenge the denial of their motions to

suppress physical evidence, certain evidentiary rulings, and the sufficiency of the evidence supporting their convictions.

I

Officers from the Texas Department of Public Safety ("DPS") began observing a white tractor-trailer parked at a truck stop restaurant, the Silver Spur, near Pharr, Texas. The tractor-trailer had remained at the restaurant long enough to attract the attention of an informant, who told the DPS of its lengthy stay. The informant explained at trial that tractor-trailer drivers typically are paid only for how much and how far they haul and that therefore the extended stay of an obviously empty truck attracted his suspicion. The white tractor-trailer, driven by Jorge Hughes, eventually left the restaurant and drove west to a small ranch near Mission, Texas. A blue Chevrolet pickup also arrived at the ranch, and DPS officers saw Hughes speaking with the unknown occupants of the blue pickup. Several weeks later, the DPS officers were informed that the white tractor-trailer was again at the Silver Spur and this time had been joined by a red tractor-trailer from the same Florida trucking company. A few days later, DPS officers saw the occupants of the red tractor-trailer meet with the occupants of a maroon and grey Dodge pickup truck.

The following week, DPS troopers followed the red tractor-trailer as it traveled north along the border. En route, they stopped the tractor-trailer for inspection.[1] The troopers determined that the driver of the red tractor-trailer was Juan Sanchez[2] and the passenger was Hughes. Sanchez and

_____

[1]    As commercial vehicle inspection officers, state troopers are permitted to stop and inspect commercial vehicles, such as the tractor-trailer. *See* 37 TEX. ADMIN. CODE § 4.13, *et seq.* (2005) (Dept. of Public Safety, Commercial Vehicle Regulations and Enforcement Procedures).

[2]    Juan Sanchez was a co-defendant with the appellants, but does not appeal his conviction or sentence.

Hughes stated that they were traveling to Laredo to pick up produce. The tractor-trailer was empty at that time, and the officers permitted them to continue on to Laredo.

The next day, at a Laredo cold storage unit, Hughes and Sanchez loaded broccoli into the tractor-trailer. The tractor-trailer left Laredo and traveled south towards McAllen, Texas. As the officers followed the truck, they determined that the back doors of the tractor-trailer were locked and sealed. As they testified at trial, seals are put on the rear doors of the trailer at loading and cannot be removed without being broken or cut. Their purpose is to prevent tampering with the load prior to its arrival at the destination specified on the Bill of Lading. DPS officers followed the tractor-trailer to a small convenience store near La Blanca, Texas (a town near the border) and watched as Hughes and Sanchez met with the occupants of the same maroon and grey pickup that had been observed earlier at the Silver Spur. The two vehicles left simultaneously, and the tractor-trailer followed the maroon and grey pickup to a ranch property a few miles to the northwest. Soon after the trucks' arrival, all the lights on the ranch and the vehicles were turned off. The officers heard the trailer door open, heard voices, and saw lights from flashlights inside the trailer, held by persons who appeared to be on top of the load.

The tractor-trailer departed the ranch after about an hour. DPS officers followed, observing that now the seal on the back of the truck was broken. After being stopped for a traffic violation, the driver, Sanchez, gave written consent for a search of the tractor-trailer. He specifically denied coming from the ranch and instead asserted that he had gotten lost coming from Laredo. These statements were reported immediately to the other DPS officers. The officers ultimately found approximately 214 kilograms of marijuana secreted in the middle of the tractor-trailer and placed the driver under arrest.

After the tractor-trailer had left the ranch, the blue pickup that had been observed earlier at the Silver Spur also departed, driving at speeds of up to 90 mph. The driver, Bazan, was stopped and gave conflicting answers to officers' questions. After the marijuana was discovered in the tractor-trailer, he also was placed under arrest by DPS officers.

Soon after Bazan left the ranch, so did the maroon and grey pickup. DPS agents stopped the pickup and questioned the occupants, who included the Pompas. José Pompa said that he had been at the ranch for a barbeque with a friend, but could not name the friend, and denied that he had seen any tractor-trailer. The Pompas and the driver were handcuffed and taken back to the ranch. Later, at the county jail, the booking officers found "broccoli beads" and green stains consistent with broccoli on Bazan's and the Pompas' clothing.

II

A

The appellants contend that the district court erred in denying their motion to suppress the broccoli beads and stains that were gathered from their clothing, arguing that the evidence was gathered incident to an unlawful arrest. Based on its findings of fact, the district court held that probable cause to arrest existed when the trucks departed the ranch and denied the motion to suppress. When reviewing a district court's denial of a motion to suppress evidence as obtained in violation of the Fourth Amendment, we review the factual determinations for clear error and the legal conclusions *de novo*. *United States v. Gonzalez*, 328 F.3d 755, 758 (5th Cir. 2003). A determination of probable cause involves the assessment of the "events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to . . . probable cause." *Ornelas v. United States*, 517

-4-

U.S. 690, 696 (1996). Thus, while we review the legal conclusions *de novo*, the "inferences drawn from those facts by resident judges and local law enforcement officers" will be given due weight. *See id.* at 699.

On appeal, each appellant argues that officers lacked reasonable suspicion to stop their pickups and perform an investigatory detention. Specifically, they argue that no illegal activity was observed by DPS officers prior to their stopping of the vehicles. Bazan concedes that because of his traffic violation, the initial stop was constitutional, while the Pompas argue that even their initial stop was not based on reasonable suspicion. All three further argue that their detention, even if justifiable as an investigatory stop under *Terry v. Ohio*, 392 U.S. 1 (1968), continued on so long as to develop into a full-blown arrest. Appellants assert that because they were stopped and held while other DPS officers searched the tractor-trailer in another location, their detention went on too long and therefore developed into an arrest *prior* to the discovery of the marijuana. *See United States v. Dortch*, 199 F.3d 193, 200 (5th Cir. 1999) (restating the well-established rule that investigatory detentions cannot last longer than necessary to fulfil the purpose of the initial stop). They conclude that their arrests were unsupported by probable cause and therefore that all evidence gathered after the arrest should be suppressed. *See United States v. Wadley*, 59 F.3d 510, 512 (5th Cir. 1995) (stating that evidence gathered subsequent to an invalid arrest is subject to suppression under the Fourth Amendment).

All appellants argue that no illegal activity had been observed by the DPS officers at the time they stopped the appellants. However, such lack of directly observable illegality does not preclude a finding of probable cause. *Hart v. O'Brien*, 127 F.3d 424, 444 (5th Cir. 1997) (citing *United States v. Pentado*, 463 F.2d 355, 361 (5th Cir. 1972)). In *United States v. Garcia*, 179 F.3d 265 (5th Cir. 1999), we held that the Border Police had probable cause to arrest the defendants for drug smuggling

without direct observation of the illegal activities. *Id.* at 268. In that case, the Border Police knew the defendants were traveling at night along a known drug trail, their footprints indicated they were carrying a heavy weight, they appeared evasive and nervous, and they gave conflicting answers to police questions. *Id.* at 269. While each of these facts, standing alone, might not be incriminating, taken together, they allowed a reasonable Border Police officer to assume that there was a fair probability of drug smuggling. *Id.* at 269-70.

Similarly, at the time DPS officers stopped each of the appellants, the officers were aware of a series of events which, when taken together, constituted probable cause to arrest. *See United States v. Muniz-Melchor*, 894 F.2d 1430, 1438 (5th Cir. 1990) ("A succession of otherwise 'innocent' circumstances or events . . . may constitute probable cause when viewed as a whole."). The officers had noted the unusually lengthy stay of each tractor-trailer at the Silver Spur, as well as interactions between the various occupants of the vehicles. After the produce was loaded in Laredo, the tractor-trailer traveled along the border and was ultimately stopped to the southeast of Laredo, not on the route to the northeastern city of New York, the ostensible destination for the broccoli according to the Bill of Lading. DPS had observed the suspicious behavior at the ranch: the lights were doused, individuals appeared to have entered the back of the trailer and were walking on top of the load, carrying flashlights. Once the tractor-trailer had departed the ranch, the DPS officers could see that the seal on the back of the tractor-trailer had been broken and replaced with a simple padlock. Upon being questioned, the driver of the tractor-trailer gave false and conflicting stories to the DPS officers, information that was immediately conveyed to the other officers involved. Accepting the facts as found by the district court, we hold that, at the time the appellants left the ranch, probable cause to believe that they were involved in drug activity existed. Therefore, the district court did not err when

it admitted broccoli beads and broccoli-stained clothing gathered incident to the arrest.[3]

B

Bazan contends that the district court erred in admitting evidence of his prior conviction for conspiracy to possess marijuana with intent to distribute. *See* FED. R. EVID. 404(b) (permitting the admission of evidence of other crimes for purposes other than action in conformity therewith, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence or mistake or accident"). Evidence of prior offenses is admissible if "it is (1) relevant to an issue other than the defendant's character, and (2) the incremental probative value of the evidence is not substantially outweighed by the danger of unfair prejudice to the defendant." *United States v. Thomas*, 348 F.3d 78, 86 (5th Cir. 2003) (quoting *United States v. Peters*, 283 F.3d 300, 312 (5th Cir. 2002)). Bazan argues that the government had not established the relevancy of the prior conviction, asserting that the prior conviction is not sufficiently similar to the instant charges to warrant admission for the limited purposes allowed by 404(b). We review a district court's decision to admit Rule 404(b) evidence fo r abuse of discretion, though this review is "necessarily heightened" in criminal cases. *United States v. Gonzalez*, 76 F.3d 1339, 1347 (5th Cir. 1996).

The relevancy argument is frivolous. The prior charge and the instant charge are identical. Both involved conspiracy to possess marijuana with intent to distribute, the only difference being in the amount of marijuana involved. Necessarily, the mens rea for the offense is identical. *See United States v. Gordon*, 780 F.2d 1165, 1174 (5th Cir. 1986). In a drug-trafficking case, the issue of intent

---

[3] Because we find probable cause to arrest existed when the appellants left the ranch, we need not consider appellants' arguments that the DPS officers' actions constituted an investigatory stop that developed into an unlawful arrest. *See Garcia*, 179 F.3d at 268 (observing that even if the extended detention of individuals constituted a "*de facto* arrest," if probable cause to arrest existed, then the arrest was not unlawful).

is always material. *Id.* at 86. Since Bazan plead not guilty the issue of intent was sufficiently raised to permit the admission of Rule 404(b) evidence. *See Gonzalez*, 76 F.3d at 1347 (holding that a not guilty plea to "raises the issue of intent sufficiently to justify the admission of Rule 404(b) evidence"). Therefore, the district court did not abuse its discretion by admitting the extrinsic evidence of a prior conviction for conspiracy to possess marijuana with intent to distribute.

Bazan argues further that the jury instruction given by the district court on the proper use of prior conviction evidence was overly broad, as it permitted the jury to consider the extrinsic evidence for issues other than knowledge of the controlled substance. We review a properly-objected-to jury instruction by assessing whether the court's charge is "a correct statement of the law and whether it clearly instructs jurors as to the principles of law applicable to the factual issues confronting them." *United States v. Mendoza-Medina*, 346 F.3d 121, 132 (5th Cir. 2003) (quoting *United States v. Lara-Velasquez*, 919 F.2d 946, 950 (5th Cir. 1990)). A broad instruction, without more, is not reversible error. *United States v. Hernandez-Guevara*, 162 F.3d 863, 873-74 (5th Cir. 1998). The district court's instructions tracked almost verbatim the language of Rule 404(b) and were drawn from the pattern jury instructions. *See* Fifth Circuit Pattern Jury Instructions: Criminal § 1.30 (2001). The district court explained that the extrinsic evidence could not be used to determine whether the defendants committed the acts charged in the indictment, but could only be used for the articulated, permissible purposes *if* the jurors found, beyond a reasonable doubt, that the defendants did commit the acts at issue. *See United States v. Brugman*, 364 F.3d 613, 621, n. 3 (5th Cir. 2004) (noting with approval a limiting instruction in the district court's jury charge that limited the jury's use of the extrinsic evidence). Therefore, the district court properly instructed the jury on the permissible uses of the extrinsic evidence.

C

Bazan also challenges the sufficiency of the evidence supporting his conviction.[4] During trial, Bazan moved for a judgment of acquittal and we therefore review the evidence to determine whether a "rational jury could have found the essential elements of the offenses beyond a reasonable doubt." *United States v. Dean*, 59 F.3d 1479, 1484 (5th Cir. 1995) (quoting *United States v. Pruneda-Gonzalez*, 953 F.2d 190, 193 (5th Cir. 1992)). Evidence, both direct and circumstantial, and "all reaso nable inferences and credibility choices," will be viewed in the light most favorable to the government. *United States v. Galvan*, 949 F.2d 777, 783 (5th Cir. 1991) (quoting *United States v. Ruiz*, 860 F.2d 615, 617 (5th Cir. 1988)).

In order to prove conspiracy to possess and distribute a controlled substance, the government must prove beyond a reasonable doubt: "(1) the existence of an agreement between two or more persons [to violate narcotics laws]; (2) the defendant's knowledge of the agreement; and (3) the defendant's voluntary participation in the conspiracy." *United States v. Sacerio*, 952 F.2d 860, 863 (5th Cir. 1992). In order to prove possession with intent to distribute drugs, the government must prove beyond a reasonable doubt: (1) knowledge; (2) possession; and (3) intent to distribute the controlled substance. *United States v. Solis*, 299 F.3d 420, 446 (5th Cir. 2002). Even in the absence of direct personal involvement, a defendant can be convicted of those substantive offenses based on his participation in the conspiracy. *Pinkerton v. United States*, 328 U.S. 640, 646-47 (1946).

Bazan argues that the government did not prove, beyond a reasonable doubt, all the elements

---

[4]     Neither of the Pompas addressed the sufficiency-of-the-evidence argument in their opening briefs, instead filing supplemental briefs on the subject. Any issue not raised in an appellant's opening brief is deemed waived. FED. R. APP. P. 28(a)(9)(A); *United Paperworkers Int'l Union AFL-CIO v. Champion Int'l Corp.*, 908 F.2d 1252, 1255 (5th Cir. 1990).

of the charges at issue.  While it is true that this is predominantly a circumstantial evidence case)) as there are no eyewitnesses to the actual handling of the marijuana)) nonetheless, the circumstantial evidence in this case is very strong and permitted the jury to infer Bazan's knowing participation in the conspiracy.  While presence and association alone cannot establish a defendant's participation in a conspiracy, the jury is permitted to "consider presence and association, along with other evidence, in finding conspiratorial activity by the defendant." *United States v. Chavez*, 947 F.2d 742, 745 (5th Cir. 1991).  The jury heard evidence of Bazan's interactions with the others on trial, in particular Hughes, prior to the tractor-trailer arriving at the ranch.  They heard testimony that Bazan was in phone contact with the other defendants, the ranch where the marijuana was loaded, and unknown individuals in New York (the ultimate destination of the tractor-trailer and marijuana), contact which increased in frequency just before the drugs were loaded on the tractor-trailer.  Bazan was present at the ranch the night the marijuana was loaded and ultimately traveled away from the ranch at high speeds in a pickup registered in the same name as the maroon and grey pickup containing the Pompas.  The facts constitute sufficient evidence for a rational jury to conclude that Bazan had engaged in a conspiracy with his co-defendants.

Regarding the possession charge, a rational jury could infer that Bazan helped load the marijuana onto the tractor-trailer from Bazan's presence at the ranch, the evidence that individuals entered the back of the truck, and the broccoli residue found on his clothing.  *See United States v. Martinez*, 190 F.3d 673, 676 (5th Cir. 1999).  This evidence alone supports a finding of both the substantive and conspiracy charges.  His conviction may also be supported under *Pinkerton*, which allows for conviction of the underlying substantive offence based on the defendant's participation in the conspiracy.  *See Pinkerton*, 328 U.S. at 640.  The evidence is sufficient to support Bazan's

conviction because a rational jury could conclude that the government proved each element of the crime of possession of a controlled substance beyond a reasonable doubt. *See United States v. Gonzales*, 121 F.3d 928, 935 (5th Cir. 1997).

Accordingly, the appellants' convictions for conspiracy and possession of marijuana with intent to distribute are AFFIRMED.