# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 26, 2010

No. 08-10932

Charles R. Fulbruge III
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

JASON MONTES; MARGARITO ARMIJO,

Defendants-Appellants

---

Appeal from the United States District Court
for Northern District of Texas

---

Before REAVLEY, DAVIS, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

In a scene reminiscent of the long ago days of Butch Cassidy and the Sundance Kid, Jason Montes ("Montes") and Margarito Armijo ("Armijo") were involved in a bank robbery spree. Much like the now infamous characters, their careers as bank robbers were short-lived and came to an end when they were captured by authorities. They now appeal their convictions and Montes also appeals his sentence. Finding no reversible error, we affirm.

No. 08-10932

I.

Montes and Armijo, along with others, participated in at least eight armed bank robberies in the Dallas area between July and September 2006 and stole more than one hundred thousand dollars.  In most of the bank robberies, the same basic modus operandi was followed.  The bank robbers drove to the target location in a stolen, four-door Honda Accord; ran into the bank wearing dark clothes, gloves, and ski masks and carrying guns; demanded money from the tellers and put it in a large, dark-colored duffel bag; and exited the bank within one minute of entering.  They drove off in the Accord and left the car - still running, with at least one of the doors open - within a mile of the bank and had someone pick them up, usually in a white Ford Expedition, to continue their escape.  Montes participated in the bank robberies by stealing the Hondas the day before the robberies and by entering the bank armed and demanding money.  Armijo sometimes entered the banks carrying a gun and other times acted as the pick-up driver who retrieved the robbers at the place where they abandoned the Accord.

Armijo and Montes were indicted on several counts of bank robbery in violation of 18 U.S.C. § 2113(a) and (b) and 18 U.S.C. § 2; conspiring to commit bank robbery in violation of 18 U.S.C. § 371; and possessing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1).  Both moved to suppress their post-arrest written confessions; the district court denied their motions.  At trial, they were found guilty on all counts.  The court sentenced Armijo to 4,692 months' imprisonment and Montes to 4,705 months' imprisonment.

II.

On appeal, Montes and Armijo raise six points of error which we address in turn.

No. 08-10932

A.

Armijo first contends that the district court erred by not suppressing his post-arrest written confession because government agents continued to question him after he allegedly asked for an attorney. In reviewing a district court's denial of a defendant's motion to suppress, this court reviews factual findings, including credibility determinations, for clear error, while we review legal conclusions de novo. *United States v. Solis*, 299 F.3d 420, 435 (5th Cir. 2002); *United States v. Foy*, 28 F.3d 464, 474 (5th Cir. 1994). "A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole." *United States v. Jacquinot*, 258 F.3d 423, 427 (5th Cir. 2001). Where a district court's denial of a suppression motion is based on live oral testimony, the clearly erroneous standard is particularly strong because the judge had the opportunity to observe the demeanor of the witnesses. *Solis*, 299 F.3d at 436; *Foy*, 28 F.3d at 474. We review the evidence in the light most favorable to the prevailing party, which in this case is the government. *Solis*, 299 F.3d at 436.

It is black letter law that when a suspect who is subject to custodial interrogation exercises his right to counsel, law enforcement officers must cease questioning until counsel is made available to him, unless the accused himself initiates further communication, exchanges or conversations with the officers. *Edwards v. Arizona*, 451 U.S. 477, 485-86 (1981). Generally, an invocation by a suspect of his right to counsel that is ignored by law enforcement officers requires that the suspect's statements made after the request be excluded by the trial court. *Id*. If a suspect, however, makes an ambiguous or equivocal reference to an attorney there is no requirement that law enforcement cease questioning. *See Davis v. United States*, 512 U.S. 452, 459 (1994) (holding that an ambiguous reference to counsel does not invoke the right to an attorney); *see also United States v. Scurlock*, 52 F.3d 531, 535-37 (5th Cir. 1995). Further, the investigator conducting the questioning has no obligation to attempt to clarify

the ambiguous comment of the accused. *Davis*, 512 U.S. at 461. Thus, "law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney." *Id.*

In this case, Armijo signed a waiver which detailed his ability to invoke his right to counsel at any time and end questioning. During the suppression hearing, government agents testified that after Armijo waived his rights they asked "if he wanted to tell his side of the story." Armijo began discussing his crimes and "there came a point when [the agents asked him] to write out a statement." At that point, the agents testified that Armijo said something to the effect of, "Maybe I should get an attorney" or "Do I need an attorney?" The officers testified unequivocally that the request was "vague" and "wasn't a demand;" Armijo never "affirmatively sa[id] he wanted an attorney." After hearing Armijo's contrary testimony, the district court found that since Armijo did not clearly invoke his right to counsel, as required, his post-arrest statements made after his ambiguous request for an attorney were admissible. We see no reason to disturb that conclusion.

Generally, our finding that the district court's determination that Armijo's reference to an attorney was ambiguous would end our inquiry. However, Armijo argues that, because he presented evidence at the suppression hearing that he had a learning disability, the district court should have held that his ambiguous statements requesting an attorney sufficiently invoked his right to counsel and required cessation of the interview. Nothing in our review of the record supports Armijo's claim. Instead, the record shows that Armijo's alleged learning disability did not impair his ability to understand and unequivocally invoke his right to counsel when two of the same government agents, who later interviewed him post-arrest, tried to question him at an earlier time concerning the same bank robberies for which he has now been convicted. This clearly

4

supports the district court's finding that Armijo understood his rights and could have unambiguously invoked his right to counsel but failed to do so.

### B.

In his second issue, Armijo argues that the district court improperly instructed the jury on the firearms offenses. He also argues that the jury instructions are "convoluted and extremely hard to understand." In assessing a jury instruction, this court considers whether it is a "correct statement of the law," *United States v. Pompa*, 434 F.3d 800, 805 (5th Cir. 2005) (internal quotation marks omitted), whether it "clearly instructs jurors," *id.*, and whether it is "factually supportable," *United States v. Mendoza-Medina*, 346 F.3d 121, 132 (5th Cir. 2003). Because Armijo failed to object at trial, we review the contents of the district court's jury instruction for plain error. *See United States v. Partida*, 385 F.3d 546 (5th Cir. 2005).

The relevant statute of conviction punishes "any person who, during and in relation to any . . . crime of violence . . . carries a firearm." 18 U.S.C. § 924(c)(1). Notably, the district court adopted our pattern jury instructions and instructed the jury as follows:

> Title 18, United States Code, Section 924(c)(1), makes it a crime for anyone to use or carry a firearm during and in relation to a crime of violence or to possess a firearm in furtherance of such a crime.
>
> For you to find a defendant guilty of this crime, you must be convinced that the government has proven each of the following beyond a reasonable doubt:
>
> First: That the defendant committed the crime alleged in Counts 1, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31, 33[,] or 35. I instruct you that bank robbery, attempted bank robbery, and conspiracy to commit bank robbery are crimes of violence; and
>
> Second: That the defendant knowingly used or carried a firearm during and in relation to, or knowingly possessed a firearm in

furtherance of, the defendant's alleged commission of the crime charged in Counts 1, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31, 33[,] or 35.

To prove the defendant "used" a firearm in relation to a crime of violence, the government must prove that the defendant actively employed the firearm in the commission of Counts 1, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31, 33[,] or 35, such as a use that is intended to or brings about a change in the circumstances of the commission of Counts 1, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31, 33[,] or 35.

To prove the defendant "carried" a firearm, the government must prove that the defendant carried the firearm in the ordinary meaning of the word "carry," such as by transporting a firearm on the person or in a vehicle. The defendant's carrying of the firearm cannot be merely coincidental or unrelated to the crime of violence.

To prove the defendant possessed a firearm "in furtherance," the government must prove that the defendant possessed a firearm that further, advances, or helps forward the crime of violence.

"In relation to," means that the firearm must have some purpose, role, or effect with respect to the drug trafficking crime.

Armijo was charged with section 924(c)(1) violations in Counts 2, 4, 6, 8, 10, 12, 14, 16, 18, 20, 26, 28, 30, 32, 34, and 36. Armijo acknowledges that the jury charge "instructed on the crime of 'using/carrying a firearm during commission of a drug trafficking crime or crime of violence'" but contends that the charge "only pertained to the odd-numbered counts in the indictment" -1, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31, 33, [and] 35, which charged bank robbery, attempted bank robbery, and conspiracy to commit bank robbery. In other words, Armijo contends that the jury was never properly instructed on the elements of a section 924(c)(1) violation.

Armijo's arguments are misplaced. The charge refers to the odd-numbered counts only because those counts allege the predicate "crime of

violence" offenses to which each individual count alleging use of a firearm attached. Armijo misreads the instruction by interpreting its references to the odd-numbered counts as meaning that the charge was intended to instruct the jury on the elements on those counts, and not on the elements of the section 924(c) counts. Taken as a whole, the district court's jury instructions correctly stated the law and simply instructed the jury to convict on each and every firearm count that it found Armijo guilty of in the corresponding odd-numbered bank robbery count. For similar reasons, we find that the jury instructions were not "convoluted or hard to understand."

## C.

Lastly, Armijo argues that his attorney rendered ineffective assistance of counsel because at certain points in his examination of a government agent and Armijo, he mentioned a co-conspirator's written statement to authorities in a manner that allegedly suggested that the co-conspirator might have incriminated Armijo in some criminal activity. Our standards for evaluating claims of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984) are well established:

> First, [a defendant] must demonstrate that his attorney's performance fell below an objective standard of reasonableness. This court has described that standard as "requiring that counsel research relevant facts and law, or make an informed decision that certain avenues will not be fruitful." Second, [a defendant] must also prove that he was prejudiced by his attorney's substandard performance. "[T]o prove prejudice, [a defendant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*United States v. Herrera*, 412 F.3d 577, 580, (5th Cir. 2005) (footnotes omitted) (quoting *United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003)).

However, we do not reach Armijo's *Strickland* challenge because it is premature.

> [T]he "general rule in this circuit is that a claim of ineffective assistance of counsel cannot be resolved on direct appeal when the claim has not been raised before the district court since no opportunity existed to develop the record on the merits of the allegations." Only in those rare occasions where the record is sufficiently developed will the court undertake to consider claims of inadequate representation on direct appeal. If we cannot fairly evaluate the claim from the record, we must decline to consider the issue without prejudice to a defendant's right to raise it in a subsequent proceeding.

*United States v. Gulley*, 526 F.3d 809, 821 (5th Cir. 2008). This case falls within that general rule because the record reveals neither the reasons for Armijo's attorney's decisions nor the availability of alternative strategies. *See United States v. Aguilar*, 503 F.3d 431, 436 (5th Cir. 2007) (refusing to hear a *Strickland* claim because "the district court did not hold a hearing and the record does not provide sufficient detail about trial counsel's conduct and motivations"); *United States v. Garcia-Jasso*, 472 F.3d 239, 245 (5th Cir. 2006) (refusing to hear a *Strickland* claim because "the reasons for [the attorney's] decisions and any plausible alternative strategies available to him are unclear"); *United States v. Gordon*, 346 F.3d 135, 137 (5th Cir. 2003) (refusing to hear a *Strickland* claim because "[t]he record has not been developed with regard to counsel's motivation for his trial tactics"). While Armijo may raise this argument in a later proceeding, it is not a ground for reversal in this appeal. *See, e.g., United States v. Villegas-Rodriguez*, 171 F.3d 224, 230 (5th Cir. 1999) ("Normally, the appropriate mechanism for raising this claim [an ineffective assistance of counsel claim] would be a habeas corpus proceeding pursuant to 28 U.S.C. § 2255.").

No. 08-10932

D.

In his first issue, Montes challenges his convictions by arguing that the evidence presented at trial was insufficient to support a guilty verdict. Because Montes raised his sufficiency argument in a motion for judgment of acquittal, we review the district court's denial of that motion by examining the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict, and asking whether a rational trier of fact could have found guilt beyond a reasonable doubt. *See, e.g., United States v. Valdez*, 453 F.3d 252, 256 (5th Cir. 2006). "[I]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell*, 678 F.2d 547, 549 & n.3 (5th Cir. Unit B 1982) (en banc). "A jury is free to choose among reasonable constructions of the evidence." *Id.* at 549.

As noted above, Montes was charged with and convicted of several counts of bank robbery, several counts of conspiracy to commit bank robbery, and several counts of possessing a firearm in furtherance of a crime of violence in relation to the bank robberies. Each charged offense required the government to prove Montes's identity as the culprit beyond a reasonable doubt. Montes argues that the government failed to meet its burden.

After reviewing the evidence presented at trial, we hold that the evidence presented by the government was more than ample to establish Monte's identity as the culprit and therefore sufficient to sustain the verdict. Montes admitted to government agents that he committed the crimes for which he was indicted. He testified at trial that he was induced to confess by the government's false promise of a 15-year sentence. The jury was entitled to reject this new story and to believe, as he had previously admitted, that he had committed the bank robberies. *See United States v. Roberson*, 6 F.3d 1088, 1093 (5th Cir. 1993). In

9

addition to his own confession, the government presented the following evidence which clearly supports the verdict: (1) Armijo's confession implicating Montes as a co-conspirator in the bank robberies; (2) Montes's cell phone records, which show that he called his co-conspirators on the days the robberies occurred; (3) Montes's work records, which showed he was absent from work on the days the robberies occurred; and (4) Montes's admission that he quit work in August 2006 and had no legitimate means of income after that point. The jury evaluated Montes's confession and his in-court denial, as well as other evidence of his guilt, and made a rational decision to convict based on the evidence. Given the amount of inculpatory evidence in the record, we cannot say that the jury was irrational in finding Montes guilty of the crimes alleged in the indictment.

E.

While testifying, Montes alleged he did not commit any of the robberies except the last one which occurred on September 30, and that he was forced to do so because he was afraid that he would be harmed if he did not participate. Accordingly, in another sufficiency of the evidence argument, he asserts that he carried his burden of proof with respect to his justification defense of duress and that the district court wrongly denied his motion for judgment of acquittal. The only evidence Montes provided to support his duress defense was his own testimony. Thus, in reviewing this claim, we asks whether, viewing the evidence in the light most favorable to the verdict, a rational juror could have discredited Montes's testimony. *See United States v. Leggett*, 299 F. App'x 372, 374 (5th Cir. 2008) (unpublished).

A duress defense requires that the defendant present evidence of each of the following four elements:

> (1) that the defendant or a member of his family was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious body injury;

No. 08-10932

(2) that he did not recklessly or negligently place himself in a situation in which it was probable that he would be forced to choose the criminal conduct;

(3) that he had no reasonable legal alternative to violating the law, that is, he had no chance to refuse to do the criminal act and to avoid the threatened harm; and

(4) that there was a direct causal relationship between the criminal action taken and the avoidance of the threatened harm.

*United States v. Willis*, 38 F.3d 170, 175 (5th Cir. 1994).

While testifying, Montes alleged that in early September, while driving to his house, he saw one of his co-conspirators washing a new SUV. Montes then claimed that he stopped by another alleged bank robber's house and asked him and his brother how the first alleged bank robber was able to buy the new SUV. The brothers "started smiling" and took him to a room and sat him down. They were joined by four other members of the conspiracy. In the room, the brothers told Montes, "[L]ook, . . . we're going to tell you what we're doing, but once we tell you[,] . . . you already know. And once you already know, then you got to do . . . . [Y]ou want . . . to see how we're making money?" At that time, Montes stated, all of the men pulled out "these big old wads of cash." Then they told Montes, "we're robbing banks."

On cross-examination, the government presented ample evidence that the September 30 bank robbery was not the first one that Montes participated in. The evidence presented included Montes's confessions that he had participated in the earlier robberies, cell phone records that he called his co-conspirators around the time of the robberies, and that he was off of work on some of the days of the robberies. With regard to Montes's claim that he felt compelled to commit the September 30 robbery once the group told him how they were making money, the government presented evidence that Montes attended three separate

11

meetings over a two-week period to plan the September 30 robbery. During this time, Montes came and went freely from his co-conspirator's houses.

Our review of the record indicates that Montes failed to establish any of the elements of duress. He did not prove that he was under a "present, imminent, and impending threat," because he did not establish that any threat was made. *Willis*, 38 F.3d at 175. Montes also failed to prove that the alleged threat was of "imminent" harm. In his version of events, the meeting at which the brothers told him about the bank robberies was two weeks before the September 30 robbery. During those two weeks, there was more than enough time for Montes to alert law enforcement about his concerns for his safety. For these reasons, the district court was correct in concluding that Montes did not prove that he "had no reasonable legal alternative to violating the law." *Id.* Finally, Montes failed to prove that there was "a direct causal relationship . . . between the criminal action taken and the avoidance of the threatened harm." *Id.* As noted above, our review of the record shows that Montes had begun committing the robberies well before September 30 and was motivated by the opportunity to make money. Based upon the above discussion, the district court did not err in rejecting Montes's duress defense.

F.

As the final arrow in his quiver, Montes contends that the district court erred in concluding that it had no authority to impose a sentence below the statutory minimum on his section 924(c) convictions. Although this court "ordinarily lacks authority to review a district court's refusal to depart below a statutory minimum, . . . we may review de novo a district court's decision that it lacked the authority to do so." *United States v. James*, 468 F.3d 245, 247 (5th Cir. 2006).

In *United States v. Krumnow*, 476 F.3d 294, 295-98 (5th Cir. 2007), we held that district courts could impose a sentence of imprisonment below a

No. 08-10932

statutory minimum only if: (1) the government so moves pursuant to 18 U.S.C. § 3553(e), asserting the defendant's substantial assistance to the government; or (2) the defendant meets the "safety valve" criteria set forth in 18 U.S.C. § 3553(f). Otherwise, post-*Booker* sentencing courts lack discretion to depart below relevant statutory minimums. *Id.* at 297.

Montes does not contend otherwise. Instead, he argues that *United States v. James*, 468 F.3d 245 (5th Cir. 2007) gave the district court the discretion to depart below the mandatory minimum sentence. In *James*, this court opined that "[t]here is . . . no statutory provision or jurisprudential holding that would prohibit a court from departing below the section 924(c)(1) minimum if the court felt that such a sentence was appropriate." *Id.* at 248. This court's holding in *Krumnow*, however, forecloses any interpretation of *James*'s language that would imbue district courts with discretion to depart below the mandatory minimum absent a substantial assistance motion under 18 U.S.C. § 3553(e) or application of the 18 U.S.C. § 3553(f) safety valve, both of which are not present in the instance case. In *Krumnow*, this court clarified its ruling in *James* and expressly held that the language upon which Montes now relies was "simply either subsumed in the analysis for why the § 924(c) sentence may be reduced if the Government requests it or is dictum. Restated, this statement [the one upon which Montes now relies] in *James* is not its holding." *Krumnow*, 476 F.3d at 297-98 (emphasis in original and some citations omitted). Thus, the district court could not depart below the sentences it actually imposed for the section 924(c) convictions.

III.

For the foregoing reasons, Armijo's and Montes's convictions are affirmed as is Montes's sentence.

13