**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 99-60406

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

versus

JACKIE HONER, also known as Earl,

                                        Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Mississippi

August 25, 2000

Before WIENER and STEWART, Circuit Judges, and ROSENTHAL[*], District Judge.

CARL E. STEWART, Circuit Judge:

Jackie Honer ("Honer") appeals his jury conviction and sentence for aiding and abetting the distribution of cocaine base, where identification was the primary issue at trial. For reasons stated below, we affirm.

---

[*] District Judge of the Southern District of Texas, sitting by designation.

On February 22, 1998 Marshall Pack ("Agent Pack"), an agent with the Mississippi Bureau of Narcotics ("MBN") made an arranged drug purchase in the parking lot of a Dairy Queen in Jackson, Mississippi. The buy was facilitated by an informant, Tabitha Spann ("Spann"), who was tape recorded by MBN agents arranging the buy with Clarence Honer, one of four Honer brothers. The Honer brothers, including defendant Jackie Honer, also known as Earl, Charles Honer, and James Honer had been identified by the MBN as suspected drug dealers and were the subjects of a long term investigation. In connection with the investigation, Agent Pack had previously seen photographs of three of the brothers including Jackie Honer. Spann believed from her conversation with Clarence Honer that "Clarence's brother" or someone named Earl, would meet her at the Dairy Queen to consummate the sale.

The transaction was monitored by a surveillance team. Spann and Agent Pack went to the Dairy Queen in Jackson. Spann got out of the car and went inside to use the rest room and buy a drink. While she was inside, a "box Chevy" with two persons inside parked next to Agent Pack's vehicle. The driver motioned for Agent Pack to roll down his window, which he did, and then asked about Spann. Agent Pack responded that she was inside, but that he had the cash and could make the buy without Spann. Agent Pack got into the back seat of the Chevy and conversed with the driver while he and an unidentified passenger broke up the cocaine base, which was cooked into rock form (commonly known as "crack"). Agent Pack paid $1,275.00, which he counted out in cash, in exchange for one and a half ounces of crack. When Spann emerged from the restaurant, she conversed with the driver of the Chevy briefly, indicating that she needed nothing else, and they all departed.

During a post-drug purchase meeting at the MBN headquarters the next day, Agent Charles Melvin presented Agent Pack and Spann with a photo lineup containing several pictures. All of the pictures were of young to middle aged black males with skin tones from brown to dark brown and similar hair styles. Agent Pack and Spann independently identified Jackie Honer as the person from whom Agent Pack made the drug purchase.

Jackie Honer was arrested in December 1998 and was indicted in a two-count indictment with his brother Clarence Honer. Jackie Honer was identified by Agent Pack at the time of his arrest. Count One charged Clarence Honer with possession with intent to distribute cocaine base. Count Two charged Clarence and Jackie Honer with aiding and abetting the possession of 31.8 grams of cocaine base with intent to distribute in violation of 18 U.S.C.§ 2 and 21 U.S.C. §841(a)(1).

During discovery and at trial, the Government could not produce the photographs of the other subjects used in the pretrial identification photo array. Before trial, defense counsel moved to suppress any evidence of the out-of-court and in-court identifications on the grounds that the absence of the photo array made the identification process inherently unreliable. The Government represented that two witnesses, Agent Pack and Spann, would identify Honer in court based on their face to face encounters with him. The district court delayed ruling on the motion, and later denied the motion, emphasizing that its ruling was grounded in the Government's representation that two witnesses would identify Honer based on their personal encounters with him. Prior to opening statements however, the Government informed the court that Spann would be unable to make an in-court identification because her encounter with the driver of the Chevy was too brief. The district court did not change its prior ruling on the motion to suppress the identifications.

Jackie Honer was convicted by a jury of Count Two of the indictment on March 16, 1999. He was sentenced to seventy-eight months incarceration with four years supervised release. Jackie Honer also received a $2,000 fine, and was ordered to pay a special assessment. Clarence Honer was a fugitive at the time of his brother's trial and did not testify. Honer timely filed a notice of appeal.

D<span style="font-variant:small-caps">ISCUSSION</span>

The question of whether identification evidence "and the fruits therefrom are admissible at trial is a mixed question of law and fact." *United States v. Fletcher*, 121 F.3d 187, 194 (5th Cir. 1997). Such mixed questions are subject to *de novo* review. *See Buser by Buser v. Corpus Christi Indep. Sch.*, 51 F.3d 490, 492 (5th Cir.1995). However, we review the district court's underlying factual findings for clear error. *See Fletcher*, 121 F.3d at 194.

I.      IN-COURT AND OUT- OF-COURT IDENTIFICATIONS

Honer contends that the admission of evidence concerning the out-of-court photographic identification deprived him of due process and constituted reversible error. He asserts that the photo line-up was impermissibly suggestive and that the admission of the evidence of the photo line-up was error, as it bolstered the in-court identification and thus affected the verdict. He also contends that the Government, by failing to produce the photographs used in the photo lineup, deprived him of the right of confrontation. He also argues that the government violated the rules of discovery, deprived him of exculpatory evidence, and generally deprived him of an opportunity to challenge the fairness of the lineup. Honer asserts that these errors accumulated, and constitute reversible error.

A conviction based on an eyewitness identification at trial following a pretrial photographic

identification must be set aside "only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."*Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). We apply a two-prong test to determine whether to exclude an in-court identification. First, we ask whether the photographic line-up is impermissibly suggestive. *See Fletcher,* 121 F.3d at 194. If it was not, our inquiry ends. If the photographic line-up was impermissibly suggestive, we next ask whether based upon the totality of circumstances, "the display posed a 'very substantial likelihood of irreparable misidentification.'" *Id.*; *see Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2252, 53 L.Ed.2d 140 (1977).

Regarding the first prong, the government contends that the photographic line-up was not impermissibly suggestive. However, when the government fails to preserve the photographic array used in a pretrial line-up "there shall exist *a presumption* that the array is impermissibly suggestive." *United States v. Sonderup*, 639 F.2d 294, 298 (5th Cir.), *cert. denied,* 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 426 (1981)(quoting *Branch v. Estelle*, 631 F.2d 1229, 1234 (5th Cir. 1980))(emphasis added). The Government disclosed that the photo array was not preserved and thus would not be entered into evidence prior to trial. Though the record discloses no evidence of bad faith by the government, the presumption that the array was impermissibly suggestive applies nonetheless.

Because the government does not overcome the presumption that the pretrial photo line-up was impermissibly suggestive, we next must determine whether under the totality of the circumstances, the pretrial photo line-up "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *See*, *Simmons*, *supra.* In other words, we must determine whether the in-court identification is reliable, notwithstanding the impermissibly

-5-

suggestive pretrial photo line-up.  *See Manson*, 432 U.S. at 114, 97 S.Ct. at 2252 (asserting that the gravamen of this determination is reliability).  In the landmark case of *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972), the Court set forth factors  to determine whether under the totality of the circumstances, an in-court identification was reliable.  These factors include: the opportunity of the witness to view the criminal at the time of the crime; the witness' degree of attention; the accuracy of the witness' prior description of the criminal; the level of certainty demonstrated by the witness at the confrontation; and the length of time between the crime and the confrontation.  *See Neil*, 409 U.S. at 199, 93 S.Ct. at 382.

In-court Identification of Agent Pack

Agent Pack had ample opportunity to observe Jackie Honer at the time of the drug purchase.  At trial, Agent Pack identified Honer with certainty as the man who sold him one  and a half ounces of crack cocaine from the car Honer parked at the Dairy Queen on February 22, 1998.  Agent Pack testified that he had undergone extensive training on observations and studying faces for identification.  He testified that the night of the purchase, he was parked in front of a well lit Dairy Queen when Jackie Honer parked next to his vehicle,  and that he studied Honer's face as he rolled down the window and the two conversed.  Agent Pack testified that he studied Honer's face at closer range when he got into his car and carried out the transaction, as $1,275 dollars in cash was counted and the crack was broken down into rocks.  He further testified that he studied Honer's face when Spann returned from inside the Dairy Queen and the three briefly conversed before Honer departed.

In addition to having previously seen a photograph of Jackie Honer because he and his brothers were the subjects of a long term investigation, Agent Pack identified Jackie Honer's photograph the day after the transaction occurred.  Agent Pack was also present at Honer's arrest

when he again identified Honer.

Also, Agent Pack provided a reasonably accurate description of Jackie Honer, as he described him in his report as being approximately six feet tall and 185 lbs. Agent Pack further indicated that the man from whom he made the drug purchase at the Dairy Queen, had gold teeth. The defense argues that Agent Pack's description of Honer was inaccurate. The presentence report reveals that Jackie Honer is actually 5'11" in height and 170 lbs., close to Agent Pack's description which was only an estimation he noted in his report. Honer did not present any evidence at trial, other than to walk up and down in front of the jury box, displaying his teeth without gold features. Arguing that he was misidentified, Honer contends that Agent Pack's written description of the seller does not comport with his actual physical description because he had no gold teeth at trial. We are unpersuaded by this argument because of the temporality of gold "fronts" or caps, popularly worn. Considering the strength of Agent Pack's testimony regarding the duration of the drug transaction and Agent Pack's previous and repeated exposure to Honer, the in-court identification of Honer was reliable. Although the Government's failure to preserve the photographic array was careless and inexcusable, that error is not dispositive in this case because there was little likelihood of misidentification.[2]

In-court Identification of Spann

---

[2] There is no merit to Honer's claim that the Government's failure to produce the array deprived him of an opportunity to confront the witness, as the trial transcript reveals that defense counsel conducted a thorough cross examination of Agent Pack. Honer's other claims that the error violated the rules of discovery and deprived him of exculpatory evidence are undeveloped and unsupported by the record.

Honer also contests the admission of Spann's pretrial identification of his photograph. Spann was unable to identify Honer at trial. On cross-examination she recounted that her interaction with the driver only lasted "a second." In so far as Spann had identified Honer's picture out of the line up the day after the purchase, she could only testify that the photograph she picked out "by glancing at him that night [] looked like the same person." The single photo Spann identified of Jackie Honer was admitted into evidence. [3]

Because the government failed to present the complete photo line-up at trial, we again presume the line up was impermissibly suggestive because of the absence of the array at trial. *Sonderup*, 639 F.2d at 298-299. For reasons stated above, the government does not rebut this presumption.

Therefore, we next ask whether Spann's in-court identification, notwithstanding the government's failure to introduce the complete photo line-up, was reliable. Our review of the

---

[3] When the Government moved to admit the single photo into evidence, the defense renewed its previous objection, and the district court admitted the photograph into evidence. The defense moved, prior to opening, for suppression of the in-court and out-of-court identification evidence on the grounds that the process was unreliable, thereby resulting in a substantial likelihood of misidentification, and other grounds associated with the absence of the array at trial. The defense renewed this objection through out the proceedings. The Government represented:

"The way it's going to play out, Your Honer, both of them were present, had the face-to-face encounters with the defendant at the Dairy Queen, and their recognition is based on face-to-face encounters. They simply confirmed the day after, yes, this is the guy we saw at the Dairy Queen."

The district court ruled:
"Based on the representations made by the attorneys, ... this procedure was not impermissibly suggestive; and under the totalit[y] of the circumstances, there is not a substantial[] likelihood of irreparable harm so the motion is overruled."

When the district court was informed that Tabitha Spann would not make an in-court identification, it did not change its ruling.

totality of circumstances reveals that Spann's in-court identification was not reliable. Spann's inability to identify Honer at trial was arguably due to her brief interaction with him, and the fact that the trial was more than one year after the transaction occurred. Spann was not an eye-witness to the offense because at the time of the transaction she was inside the Dairy Queen. When she emerged, her only conversation with the seller was "probably three words." On cross examination Spann could not recall anything distinctive about the driver of the Chevy. If, as the Government concedes, Spann did not see the seller long enough to make an identification, then her photographic identification was likewise flawed. Beginning with our presumption that the line up was impermissibly suggestive, considering Spann's low degree of certainty regarding the factors set forth in *Neil v. Biggers,* and noting the improper admission into evidence of Honer's single photograph, we find that admission into evidence of Spann's pretrial identification of Honer's photograph was error. [4]

Based on these deficiencies, Honer argues that his conviction should be reversed. We do not agree. Spann's unreliable identification did not affect the reliability of Agent Pack's in-court identification. Thus, Spann's in-court identification of Honer did not cumulatively or individually, fatally damage the reliability of Agent Pack's in-court identification or rise to the level of establishing reversible error. An error is harmless if it is "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Having carefully reviewed the record in this case, we are

---

[4] The Government argues that testimony regarding Spann's identification at the pre-trial photographic spread was proper because evidence of prior identification is admissible, pursuant to FED.R.EVID., Rule 801(d)(1)(C), and *United States v. Owens*, 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988). The requirement that evidence of prior identification not be the product of an impermissibly suggestive out-of-court identification nevertheless applies. *See Owens*, 484 U.S. 554, 561, 108 S.Ct. 838, 843, 98 L.Ed.2d 951 (1988).

convinced that Agent Pack's testimony was so independently reliable that the jury could have, and did, render a guilty verdict that was not tainted by the government's miscues. Accordingly, the identification of Jackie Honer was reliable and we have confidence in the verdict obtained.

II.    MISTRIAL

Finally, Honer contends that the government bolstered its case with hearsay testimony and unfair opinion testimony. As such, Honer contends that the admission of this evidence constituted an abuse of discretion by the district court. Honer argues that Agent Pack's testimony on redirect, that the Honer brothers had been targeted as drug dealers, and that the police had information that the Honers were "moving crack" through the Jackson area was highly prejudicial evidence of other crimes or bad acts that warranted the district court declaring a mistrial.

We review the denial of a motion for mistrial for abuse of discretion. *United States v. Millsaps*, 157 F.3d 989, 993 (5th Cir. 1998). Admission of extrinsic evidence under Fed. R. Evid. 404(b) is subject to reversal upon a clear showing of abuse of discretion. *United States v. Guerrero*, 169 F.3d 933, 943 (5th Cir. 1999). Federal Rule of Evidence 404(b) mandates that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." A new trial is necessary when there is a significant possibility that the prejudicial evidence had a substantial impact on the verdict, viewed in light of the entire record. *See United States v. Millsaps,* 157 F.3d 989, 993 (5th Cir. 1998).

The defense raised the issue of Honer and his brothers being the subjects of a narcotics investigation during cross-examination of Agent Pack. The Government's response is valid, that it only pursued the issue on redirect to show that Honer was not randomly or unfairly targeted. The district court cautioned the jury at the time the objection was made, that there was no proof that

Honer "was actually doing what [] Pack said he heard they were doing[]" and later appropriately charged the jury accordingly.

Considering the net effect of the cautionary instruction given, and the curative jury charge, even if the colloquy was presumed to be improper, the prejudice was rendered harmless. *See United States v. Nguyen*, 28 F.3d 477, 483 (5th Cir. 1994). Our review of the record indicates that the district court did not abuse its discretion in denying a mistrial.

Honer sought leave to file a supplemental brief but did not do so until after his case was taken under submission on appeal. The motion to file a supplemental brief is denied.

## CONCLUSION

Honer's convictions and sentences are AFFIRMED. Honer's motion to file a supplemental brief is DENIED.

AFFIRMED.