# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 20, 2013

No. 12-40714

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

COREY JAMES LEWIS,

Defendant–Appellant.

Appeal from the United States District Court
for the Eastern District of Texas
No. 4:10-CR-223

Before REAVLEY, JOLLY, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Corey Lewis appeals his conviction of conspiracy to possess with intent to distribute cocaine. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-40714

I.

At the request of a government confidential informant ("CI"), Lewis arranged the sale of five kilograms of cocaine. Lewis found a source for the cocaine—Jimmie Evans—set a price for the drugs, and negotiated a location for the transaction. Lewis and Evans met the CI in a mall parking lot and showed him one kilogram of a white substance in the center console of a rented vehicle.[1]

Lewis and Evans were arrested as they followed the CI to a second location; law enforcement officers had established surveillance at the mall before Lewis and Evans arrived. The white substance field-tested positive for cocaine. After waiving his rights, Lewis confessed that he had contacted Evans through an intermediary to obtain five kilograms of cocaine to sell to the CI. Lewis admitted there was a kilogram of the drug in the vehicle in which he was riding with Evans before their arrest.

II.

Lewis was charged with a single count of conspiracy to possess with intent to distribute cocaine. The district court denied his motion to exclude evidence that the government did not disclose until the week before trial—several months after the discovery deadline.

At trial, the CI described Lewis's role in the cocaine transaction, which was also documented in numerous recorded conversations. In one, Lewis bragged to the CI about "blowing weed smoke" in Evans's face. The CI also testified that he had previously purchased illegally-copied DVDs from Lewis and claimed that he had also sent multiple individuals to buy marihuana from Lewis.

Evans corroborated Lewis's role in the cocaine conspiracy. He also claimed knowledge of Lewis's illegal DVD sales and testified that Lewis had boasted

---

[1] Under the arrangement Lewis and Evans made with the CI, the four additional kilos were reserved for a future transaction.

2

No. 12-40714

about selling "sacks" of marihuana to strippers at a local cabaret. Lewis admitted that he had regularly sold illegally-copied DVDs to the CI but denied ever selling marihuana. Lewis's common-law wife, Brandi Frongner, testified to Lewis's marihuana use and role in the cocaine transaction. On cross-examination, she stated that Lewis had been arrested for family violence against her.

Before closing arguments, Lewis requested a jury instruction on entrapment, which the court denied, and Lewis was convicted. At the conclusion of the sentencing hearing, Lewis's counsel requested that the court "allow me to withdraw and . . . appoint an appellate lawyer for him so he can exercise his appellate rights." The court granted the motion, and Lewis timely appeals his conviction with the assistance of appointed counsel.

### III.

Lewis contends the district court erred by admitting (1) a government expert's curriculum vitae ("CV") and lab report; (2) evidence that Lewis had previously distributed marihuana; and (3) evidence that Lewis used marihuana and sold illegally-copied DVDs. "Where the party challenging the trial court's evidentiary ruling makes a timely objection, we review the ruling under an abuse of discretion standard." *United States v. Sumlin*, 489 F.3d 683, 688 (5th Cir. 2007). "District courts are given broad discretion in rulings on the admissibility of evidence. . . ." *Rock v. Huffco Gas & Oil Co.*, 922 F.2d 272, 277 (5th Cir. 1991).

> If we find an error in the admission or exclusion of evidence, we review for harmless error. . . . "Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." FED. R. CRIM. P. 52(a). An error affects substantial rights if there is a reasonable probability that the improperly admitted evidence contributed to the conviction.

*Sumlin*, 489 F.3d at 688 (citation omitted). Where the complaining party failed to object to an evidentiary ruling at trial, we review only for plain error. *United*

No. 12-40714

*States v. Thompson*, 454 F.3d 459, 464 (5th Cir. 2006).

> Plain error review requires four determinations: whether there was error at all; whether it was plain or obvious; whether the error affected the defendant's substantial rights; and whether this court should exercise its discretion to correct the error in order to prevent a manifest miscarriage of justice.

*United States v. Dominguez-Alvarado*, 695 F.3d 324, 328 (5th Cir. 2012).

### A.

The government timely disclosed offense reports reflecting that Lewis believed he was transporting one kilogram of cocaine and indicating that the seized substance field-tested positive for cocaine. But the record does not show that the government produced the lab report and CV of its expert witness, a Drug Enforcement Administration ("DEA") chemist, before the week prior to trial. The district court denied Lewis's motion to exclude that evidence, because "[t]here's no surprise" that the substance at issue was cocaine. Lewis maintains that ruling was an error prejudicing his substantial rights, because it "generally affected how [his attorney] had advised [Lewis] and prepared for trial . . . and specifically precluded him from properly investigating the DEA chemist's credentials."

Even assuming the court abused its discretion in admitting the lab report and CV, Lewis has not shown prejudice to his substantial rights. Beyond bare assertion, he has not demonstrated that the tardy disclosure affected his defense in any way. He did not move for a continuance or ask any questions about the chemist's background and education on cross-examination. *Cf. United States v. Aguilar*, 503 F.3d 431, 434 (5th Cir. 2007) (per curiam).

There was overwhelming evidence that Lewis was guilty of the charged

No. 12-40714

offense,[2] including tape-recorded conversations, testimony of numerous witnesses describing his role in the conspiracy, and Lewis's confession that he and Evans intended to sell cocaine.[3] There is no reasonable probability that the lab report and CV, even if improperly admitted, affected the verdict. *See Sumlin*, 489 F.3d at 688.

## B.

The week before trial, the government provided written notice that it intended to offer evidence of Lewis's involvement in the distribution of marihuana. The district court denied Lewis's motion to exclude but allowed him to add two new witnesses. It also found that the evidence was admissible as extrinsic under Federal Rule of Evidence 404(b).[4]

A district court's broad discretion in evidentiary matters extends to Rule 404(b).[5] Lewis concedes that "no circuit court has passed on the breadth of a district court's discretion in such cases. . . ." He avers, however, that the government's "blatant disregard for the District Court's scheduling order should not be

---

[2] *See United States v. Lechuga*, 888 F.2d 1472, 1476 (5th Cir. 1989) ("To establish guilt of conspiracy to distribute cocaine under 21 U.S.C. §§ 841(a)(1), 846, the government must prove beyond a reasonable doubt (1) the existence of an agreement between two or more persons to commit one or more violations of the narcotics laws and (2) the defendant's knowledge of, (3) intention to join, and (4) voluntary participation in the conspiracy.").

[3] Lewis's attorney also stated that Lewis was "guilty of the offense but for the defense of entrapment . . . . If he doesn't have entrapment," *see* part V, *infra*, "there's no defense for him." Additionally, although the actual nature of seized substance is not among the elements the government was required to prove, *see Lechuga*, 888 F.2d at 1476, Lewis has never asserted—either before the production of the lab report or afterwards—that it was anything other than cocaine.

[4] We need not, and do not, reach the issue of whether the marihuana-distribution evidence was admissible as intrinsic to the charged offense, nor do we address whether the government provided sufficient *oral* notice before filing its Rule 404(b) notice.

[5] *See* FED. R. EVID. 404(b) Advisory Committee's Note (1991 Amendments) ("Other than requiring pretrial notice, no specific time limits are stated in recognition that what constitutes a reasonable request or disclosure will depend largely on the circumstances of each case.").

rewarded, particularly where such disregard resulted in miscommunication or misunderstanding affecting Lewis's right to due process of law and effective assistance of trial counsel."

As with the CV and lab report, Lewis did not move for a continuance in response to the Rule 404(b) notice. Although he vehemently denied ever selling marihuana, he has not explained, much less shown, how the government's allegedly late disclosure significantly affected his trial strategy or contributed to his conviction. *See Sumlin*, 489 F.3d at 688. Even if the district court erred when it concluded that "the information was disclosed in a manner that would allow defense counsel to prepare for trial," Lewis has not shown prejudice to his substantial rights. *Cf. Aguilar*, 503 F.3d at 434.

In the district court, Lewis's objection to the admission of the marihuana-distribution evidence focused on the alleged untimeliness of the government's notice. We review Lewis's argument that the evidence was substantively inadmissible under Rule 404(b)—made for the first time on appeal—for plain error only.[6]

> Although extrinsic offense evidence is not admissible to prove the defendant's bad character and action in conformity therewith, it may be introduced to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See* [Rule] 404(b). Interpreting Rule 404(b), we have stated:
>
>> What the rule calls for is essentially a two-step test. First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess

---

[6] In his reply brief, Lewis observes that the *district court* specifically addressed the substantive admissibility of the marihuana-distribution evidence under Rule 404(b). Though maintaining that the government's notice was untimely, Lewis, however, never objected to the court's substantive finding. *See United States v. Williams*, 620 F.3d 483, 488–89 (5th Cir. 2010) ("[W]here the defendant did not object to the evidence on the basis presented on appeal, we review the district court's evidentiary ruling for plain error."); *see also Dominguez-Alvarado*, 695 F.3d at 327–28 (discussing when plain-error review applies).

No. 12-40714

> probative value that is not substantially outweighed by
> its undue prejudice . . . .

*United States v. Hernandez-Guevara*, 162 F.3d 863, 870 (5th Cir. 1998) (quoting *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc)).

Lewis does not contest the probative value of the marihuana-distribution evidence but argues that it was not relevant. He relies on *United States v. Carrillo*, 660 F.3d 914, 929 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 1639 (2012), in which we stated that "Carrillo's conviction for delivery of cocaine in 2005 arguably had no legitimate relevance to either his knowledge of methamphetamine or his intent to distribute methamphetamine in 2009." We concluded, however, that "the error, if any, was harmless," in part because "there was strong evidence of Carrillo's guilt, including his confession." *Id.*

The district court found that Lewis's prior distribution of marihuana was "relevant to an issue other than the defendant's character" and noted that Lewis's not-guilty plea "puts the issue of his intent into the mix . . . ."[7] The alleged error—even if plain or obvious—did not affect Lewis's substantial rights, especially given the overwhelming evidence of guilt. *Cf. id.*

C.

For the first time on appeal, Lewis claims that evidence of his marihuana use and illegal DVD sales was neither intrinsic nor admissible under Rule 404(b). We review this contention for plain error only. *Thompson*, 454 F.3d at 464.

> To determine whether "other acts" evidence was erroneously admitted, we must first decide whether the evidence was intrinsic or

---

[7] *See United States v. Pompa*, 434 F.3d 800, 805 (5th Cir. 2005) ("In a drug-trafficking case, the issue of intent is always material . . . since [the defendant] plead[ed] not guilty[,] the issue of intent was sufficiently raised to permit the admission of Rule 404(b) evidence.") (citation omitted).

No. 12-40714

extrinsic. "'Other act' evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." *United States v. Williams,* 900 F.2d 823, 825 (5th Cir. 1990). Intrinsic evidence is admissible to "complete the story of the crime by proving the immediate context of events in time and place," *United States v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1996), and to "evaluate all of the circumstances under which the defendant acted," *United States v. Randall*, 887 F.2d 1262, 1268 (5th Cir. 1989). Intrinsic evidence does not implicate rule 404(b), and "consideration of its admissibility pursuant to [that rule] is unnecessary." *United States v. Garcia*, 27 F.3d 1009, 1014 (5th Cir. 1994).

*United States v. Rice*, 607 F.3d 133, 141 (5th Cir. 2010) (alteration in original).

Regarding his marihuana use, Lewis again relies on *Carrillo*, 660 F.3d at 927, in which we found that evidence of Carrillo's use of methamphetamine, *the month before* he possessed with intent to distribute the same, was not intrinsic. *Carrillo* is inapposite, however, because Lewis used marihuana—and, in a taped conversation, admitted to doing so—*while he and his co-conspirator were waiting to deliver the cocaine.* As *Carrillo* itself indicates, such temporally proximate conduct is presumptively intrinsic. *See id.* at 927–28 (collecting cases).

It is a closer question whether evidence of Lewis's illegal DVD sales is intrinsic. The government contends that the evidence "showed how [the CI] and Lewis knew each other" but offers no authority in support of its theory that the evidence is thereby intrinsic. Nor does the government maintain that it ever provided *written* notice of Lewis's DVD sales pursuant to Rule 404(b). Lewis, however, has made no showing—or even argument—that the admission of the DVD evidence affected his substantial rights. Nor would a failure to notice the error blacken the reputation of the judiciary or effect a "manifest miscarriage of justice." *Dominguez-Alvarado*, 695 F.3d at 328. Lewis's claim, therefore, fails on plain-error review.

8

IV.

The district court sustained Lewis's objection to Frongner's brief mention of Lewis's domestic-violence arrest. The court promptly instructed the jury to disregard the testimony but denied Lewis's contemporaneous and subsequent motions for a mistrial. Less than a minute elapsed between Frongner's stricken testimony and the denial of Lewis's first motion. The jury instructions reiterated that "any testimony or other evidence which has been stricken" should not be considered.

"We review the denial of a motion for mistrial for abuse of discretion." *United States v. Hoder*, 225 F.3d 549, 555 (5th Cir. 2000). "If the motion for mistrial involves the presentation of prejudicial testimony before a jury, a new trial is required only if there is a significant possibility that the prejudicial evidence had a substantial impact upon the jury verdict, viewed in light of the entire record." *United States v. Paul*, 142 F.3d 836, 844 (5th Cir. 1998).

We have already observed that the record, when viewed as a whole, contains overwhelming evidence of the charged offense. It also shows that Lewis's objection to the improper testimony was swiftly sustained. The court, both contemporaneously and before deliberation, unambiguously instructed the jury to disregard Frongner's stricken testimony. Additionally, in denying Lewis's renewed motion for a mistrial, the court noted that Frongner was testifying *on his behalf* and was "obviously very fond of [] Lewis." We "give considerable weight to the trial judge's assessment of the prejudicial effect of [a] remark." *United States v. Nguyen*, 28 F.3d 477, 483 (5th Cir. 1994).

Lewis concedes that the court responded to the improper testimony with "an immediate curative instruction" but maintains that the testimony "was so highly prejudicial that it would have promoted a guilty verdict based upon bad character alone." Lewis's only argument in support of that assertion is that the jury was "largely female." It is wildly speculative to assume that female jurors

No. 12-40714

disregarded their instructions and voted to convict Lewis of drug-related conspiracy based on fleeting testimony of domestic violence.[8]  Lewis has not shown "there is a significant possibility that the prejudicial evidence had a substantial impact upon the jury verdict. . . ." *Paul*, 142 F.3d at 844.

V.

The district court refused to give Lewis's proposed jury instruction on entrapment, because "[t]here is insufficient evidence . . . that there was some government involvement and inducement more substantial than simply providing an opportunity."  "[W]e review *de novo* the refusal to instruct the jury on the defense of entrapment." *United States v. Ogle,* 328 F.3d 182, 185 (5th Cir. 2003). "Before he will be entitled to an entrapment defense, . . . [a] defendant bears the burden of presenting evidence of both '(1) his lack of predisposition to commit the offense and (2) some governmental involvement and inducement more substantial than simply providing an opportunity or facilities to commit the offense.'" *Id.* (quoting *United States v. Bradfield*, 113 F.3d 515, 521 (5th Cir. 1997)).

"Government inducement consists of the creative activity of law enforcement officials in spurring an individual to crime" and includes "either threatening or harassing conduct or actions designed specifically to take advantage of the defendant's weaknesses. . . ." *United States v. Gutierrez*, 343 F.3d 415, 420 (5th Cir. 2003) (internal quotation marks omitted).

> It is well settled that the fact that officers or employees of the Government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution.  Artifice and stratagem may be employed to catch those engaged in criminal enterprises.

---

[8] *See Zafiro v. United States*, 506 U.S. 534, 540 (1993) (noting that "juries are presumed to follow their instructions") (internal quotation marks omitted)

10

No. 12-40714

*Jacobson v. United States*, 503 U.S. 540, 548 (1992) (internal quotation marks omitted).

"Courts have found a basis for sending the entrapment issue to the jury . . . where government officials . . . used 'repeated suggestions' which succeeded only when defendant had lost his job and needed money for his family's food and rent. . . ."[9] Lewis asserted at trial that the CI offered him $1,000 to facilitate the drug transaction at a time when Lewis was in dire financial straits. The CI denied ever offering Lewis money to participate in the transaction, nor did Lewis mention this supposed arrangement in his initial confession.[10] The record is also devoid of evidence that the CI was aware of Lewis's financial situation.

Nor has Lewis shown that it took "repeated suggestions" for him to break the law. *Contra Kessee*, 992 F.2d at 1003. When Lewis initially informed the CI that he might not be able to obtain the cocaine, the CI told Lewis that he was willing to get the drugs elsewhere. Rather than withdraw from the conspiracy, Lewis quickly found a supplier and arranged the transaction.

Most significantly, there is no evidence—or even suggestion—that the government or its agents engaged in "threatening or harassing conduct," which we have identified as the common element in cases in which government inducement has been found. *See Gutierriez*, 343 F.3d at 420. To demonstrate inducement, Lewis "was required to present not just a smattering or a scintilla of evidence . . . but substantial evidence that it was the Government that was responsible for the formation of [his] intent to join the conspiracy." *Ogle*, 328 F.3d at

---

[9] *United States v. Gendron*, 18 F.3d 955, 961 (1st Cir. 1994) (quoting *United States v. Kessee*, 992 F.2d 1001, 1003 (9th Cir.1993)); *see also Gutierrez*, 343 F.3d at 420 n.13.

[10] The record shows, however, that *Lewis* structured the transaction to ensure himself a profit of $1,000 per kilogram of cocaine. Evans testified that the price was "[$]23,500 each kilo," and that Lewis "said he was gonna make [$] 5,000 off five kilos . . . ." Evans's testimony was corroborated by a recorded phone conversation in which Lewis told the CI that the "ticket," *i.e.*, price of the first kilo, was "like two, four, five," *i.e.*, $24,500.

11

No. 12-40714

187–88.  He has failed to do so and therefore was not entitled to an entrapment instruction.[11]

## VI.

After Lewis's attorney moved to withdraw at the close of sentencing, the district court stated that "normally you would represent him on appeal."  Lewis's attorney averred that "I think there may be some things I wouldn't be able to do, maybe something I did wrong, and I wouldn't want to call that on myself if I did. It puts me kind of in a conflict to represent him on it."  On appeal, Lewis maintains that the court should have *sua sponte* found ineffective assistance of counsel ("IAC"), because his attorney's (1) "pre-trial investigation was inadequate to prepare for trial and his inadequate investigation prejudiced Lewis's defense"; and (2) "presentation of Lewis's case-in-chief was deficient and prejudiced Lewis's defense."

> [T]he general rule in this circuit is that a claim of [IAC] cannot be resolved on direct appeal when the claim has not been raised before the district court since no opportunity existed to develop the record on the merits of the allegations. . . .  Only in those rare occasions where the record is sufficiently developed will the court undertake to consider claims of inadequate representation on direct appeal . . . .  If we cannot fairly evaluate the claim from the record, we must decline to consider the issue without prejudice to a defendant's right to raise it in a subsequent proceeding.

*United States v. Gulley*, 526 F.3d 809, 821 (5th Cir.2008) (per curiam) (citations and internal quotation marks omitted).

This case falls within that general rule, because Lewis did not raise an IAC claim in the district court.  Nor is the record otherwise "sufficiently developed": "[T]he district court did not hold a hearing and the record does not provide sufficient detail about trial counsel's conduct and motivations to allow this

---

[11] Because Lewis has not shown inducement, we do not address predisposition.

No. 12-40714

court to make a fair evaluation of the merits of [defendant's] claim." *Aguilar*, 503 F.3d at 436.

Lewis contends that his attorney's statements upon withdrawal constituted a tacit admission of "deficient performance and the prejudice to Lewis's defense resulting therefrom." Such conjecture is not a sufficient substitute for the record development—such as "the reasons for [the]'s attorney's decisions []or the availability of alternative strategies," *United States v. Montes*, 602 F.3d 381, 387 (5th Cir. 2010)—that is a necessary predicate to consideration of an IAC claim. Because Lewis's claim is premature, we decline to consider it. *Gulley*, 526 F.3d at 821.

The judgment of conviction is AFFIRMED.