# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-40612

United States Court of Appeals
Fifth Circuit

**FILED**
June 6, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

JOHNNY LEE DAVIS,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, CLEMENT, and HIGGINSON, Circuit Judges.

HIGGINSON, Circuit Judge:

Johnny Lee Davis was convicted following a bench trial of passing an altered obligation of the United States with intent to defraud and was sentenced to a 34-month term of imprisonment. *See* 18 U.S.C. § 472. Davis appeals, challenging his conviction and sentence. We AFFIRM.

I.

On July 25, 2012, a Grand Jury indicted Johnny Lee Davis with two counts of knowingly passing counterfeit and altered obligations of the United States with the intent to defraud. Count one alleged that Davis attempted to pass a forged $100 bill on March 9, 2012, at a Taco Bell. Count two alleged that Davis attempted to pass a forged $100 bill on April 11, 2012, at a Dollar Tree. Davis waived his right to a jury trial, and the district court held a bench trial

No. 13-40612

on October 17, 2012. The district court found Davis guilty on count two (the Dollar Tree count) but acquitted him on count one (the Taco Bell count). The court sentenced Davis to a 34-month term of imprisonment, a three-year term of supervised release, and a $100 special assessment.

## II.

Davis raises five issues on appeal. Davis argues that his trial was defective because (1) the district court erred by admitting into evidence the counterfeit $100 bill passed to a Dollar Tree employee on April 11, 2012, (2) the district court erred by allowing in-court identification testimony of three Dollar Tree employees, and (3) the district court erred by compelling Davis to stand trial in handcuffs and shackles. Davis further argues that his sentence is defective because (4) the district court erred by imposing a two-level enhancement pursuant to United States Sentencing Guidelines § 2B5.1(b)(2)(A) and § 2B5.1(b)(3) for manufacturing or producing a counterfeit obligation or possessing or having custody of or control over a counterfeiting device or materials, and (5) the imposition of the enhancements violated *Alleyne v. United States*, 133 S. Ct. 2151 (2013).

## 1.

Davis first challenges admission of a counterfeit $100 bill that the district court admitted into evidence on the ground that the Government had not made "a prima facie showing of authenticity." Neither at a pretrial conference nor during trial did Davis object to the admission of this evidence. Because Davis did not preserve this issue in the district court, review is for plain error. *See Puckett v. United States*, 556 U.S. 129, 135 (2009). To establish plain error, Davis must show a clear or obvious forfeited error affecting his substantial rights. *See id.* If he makes such a showing, this court has the

discretion to correct the error but only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

"The standard for authentication is not a burdensome one." *United States v. Jackson*, 636 F.3d 687, 692–93 (5th Cir. 2011); *see* Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.").

The authenticity of the evidence was supported by sufficient evidence at trial. Amanda Marie Garcia, a former employee of the Dollar Tree, identified the Government's exhibit 2 as the bill that Davis gave to her on April 11, 2012. Moreover the trial proof demonstrated that Garcia gave the bill to Antonia Mora, the Dollar Tree's assistant store manager, and Mora gave it to Evangelina Hernandez, the store manager. Hernandez gave the bill to Corpus Christi Police Officer Jose Vela, who logged the evidence into the property control room. Special Agent Daniel Morales testified that Officer Colby Burris gave him both bills, Government's exhibits 1 and 2, and that he (Morales) was present when the evidence was removed from the evidence vault at the Corpus Christi Police Department. Morales signed for the property transfer on May 2, 2012.

This evidence was more than sufficient to support a finding that Government's exhibit 2 was the bill that was passed to the Dollar Tree employee on April 11, 2012.[1] Accordingly, Davis has not demonstrated error,

---

[1] Officer Colby Burris of the Corpus Christi Police Department testified that on May 2, 2012, at Special Agent Morales's request, he called Diego Rivera (a crime scene investigator), who was processing the bill, to advise him that Morales was coming to retrieve the bill. To the extent that Davis is arguing that the evidence lacked authenticity because there was an interruption or "contamination" in the processing of the bill for fingerprints, he has cited no authority in support of his argument and thus cannot demonstrate plain error by the district court in admitting the evidence. *See United States v. Evans*, 587 F.3d 667, 671 (5th Cir. 2009); *see also Puckett*, 556 U.S. at 135.

plain or otherwise, with respect to his challenge to the district court's admission of the counterfeit $100 bill into evidence.

2.

Next, Davis argues that the district court erred by allowing the prosecution to present an in-court identification based on an out-of-court identification procedure that he claims was unnecessarily suggestive. The question whether identification evidence and its fruits are admissible is a mixed question of law and fact, which generally is reviewed de novo. *United States v. Honer*, 225 F.3d 549, 552 (5th Cir. 2000). This court reviews the district court's underlying factual findings for clear error. *Id.* Davis, however, did not argue in the district court that the in-court identifications violated due process because the pretrial photographic lineups were impermissibly suggestive; nor did he challenge the pretrial photographic identification procedures or the admissibility of the exhibits depicting the three photographic lineups. Thus, review is limited to plain error. *See, e.g.*, *United States v. Rogers,* 126 F.3d 655, 657 (5th Cir. 1997); *see also United States v. Sanchez*, 988 F.2d 1384, 1389 (5th Cir. 1993) (reviewing challenge to photographic lineup raised for the first time on appeal for plain error).[2]

A conviction based on an eyewitness identification at trial following a pretrial photographic identification must be set aside "'only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Honer*, 225 F.3d at 552 (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)). We apply

---

[2] We have recognized that "a defendant who fails to make a timely suppression motion cannot raise that claim for the first time on appeal, and also that failure to raise specific issues or arguments in pre-trial suppression proceedings operates as a waiver of those issues or arguments for appeal." *United States v. Scroggins*, 599 F.3d 433, 448 (5th Cir. 2010) (internal quotation marks omitted). Even so, "our cases identifying such waiver have often proceeded to evaluate the issues under a plain error standard for good measure." *Id.*

a two-prong test to determine whether to exclude an in-court identification. *Honer,* 225 F.3d at 552. First, this court asks whether the photographic lineup is impermissibly suggestive; if it was not, the inquiry ends. *Id.* If the photographic lineup was impermissibly suggestive, we ask whether considering the totality of circumstances, the photographic display posed a very substantial likelihood of irreparable misidentification. *Id.* at 552–53. This court must determine whether the in-court identification was reliable, notwithstanding the impermissibly suggestive pretrial photographic lineup. *Id.* In determining whether an in-court identification was reliable, this court considers such factors as: the opportunity of the witness to view the criminal at the time of the crime; the witness's degree of attention; the accuracy of the witness's prior description of the criminal; the level of certainty demonstrated by the witness at the confrontation; and the length of time between the crime and the confrontation. *Id.*

Even assuming that the photographic lineups were impermissibly suggestive, based on the totality of the circumstances, there was no substantial likelihood of irreparable misidentification by Mora and Hernandez. *See id.* Mora and Hernandez identified Davis at trial. According to Hernandez, on the day of the incident, she viewed Davis for three to five minutes from her office and could see his face for about two minutes. She viewed a photographic lineup on April 30, 2012, and less than a minute later, she identified Davis as the person passing the counterfeit bill. Similarly, Mora viewed the photographic lineup on April 27, 2012. She testified that on the day of the incident, she was "face to face" with the person who passed the bill and got a very good look at him. She also did not have to look at the lineup for very long before identifying Davis because she remembered "that guy's face."

No. 13-40612

It is a closer question whether, based on the totality of the circumstances, there was a substantial likelihood of irreparable misidentification by Garcia, the Dollar Tree cashier. *See id.* Garcia admitted that she just glanced at the individual who passed her the bill and that there was a considerable length of time between the incident and the viewing of the photographic lineup.[3] But even if, based on the totality of the circumstances, there exists a substantial likelihood of irreparable misidentification by Garcia, to establish plain error, Davis must show not only a clear or obvious error but also that such error affected his substantial rights. *See Puckett,* 556 U.S. at 135. Mora and Hernandez both identified Davis at trial and each viewed the photographic lineups within weeks of the incident, quickly identifying Davis as the individual who passed the bill. Hernandez viewed Davis for three to five minutes from her office and could see his face for about two minutes. Moreover, Mora was "face to face" with the person who passed the bill and got a very good look at him. In the light of the testimony of Mora and Hernandez, Davis cannot demonstrate that his substantial rights were affected as a result of Garcia's in-court identification. *See Sanchez*, 988 F.2d at 1389; *Puckett*, 556 U.S. at 135. Accordingly, Davis has not demonstrated plain error regarding the in-court identifications of the witnesses at trial. *See Sanchez*, 988 F.2d at 1389.

3.

Davis next argues that the district court erred by having Davis handcuffed and shackled at trial. Davis did not object at any time during the October 2012 bench trial to being handcuffed and shackled.[4] Because Davis did

---

[3] Garcia did, however, testify that she "noticed his face" and "just looked at his face" when the suspect passed her the bill.

[4] Rather, the only time he objected was at the conclusion of his May 2013 sentencing; although represented by counsel, Davis, *pro se*, objected to, inter alia, "the violation of [his] Sixth amendment right by leaving [him] in shackles and chains during [his] trial in front of witnesses." The district court overruled the objection.

not object during the bench trial to the requirement that he stand trial handcuffed and shackled, our review is limited to plain error. *See United States v. Banegas*, 600 F.3d 342, 346 (5th Cir. 2010) (noting that a due process claim based on shackling is preserved when the defendant "afforded the district court an adequate opportunity to explore the issue"); *see also United States v. Morin*, 627 F.3d 985, 994 (5th Cir. 2010); *Puckett*, 556 U.S. at 135. To the extent that Davis argues that his bench trial was rendered fundamentally unfair because he was handcuffed during the testimony of a witness, *see Deck v. Missouri*, 544 U.S. 622, 629 (2007), Davis has not demonstrated error, plain or otherwise. *See United States v. Joseph*, 333 F.3d 587, 590–91 (5th Cir. 2003).

Indeed, Davis provides no authority for the proposition that *Deck* should be extended to bench trials—a first flaw on plain error review. *See Evans*, 587 F.3d at 671 ("We ordinarily do not find plain error when we have not previously addressed an issue." (internal quotation marks omitted)). But even assuming *Deck*'s application, the record demonstrates circumstances making it, in Davis's words, "apparent that shackling is justified." *See, e.g.*, *Banegas*, 600 F.3d at 346 (analyzing a similar claim and noting that "[t]he record is likewise void of any indication that Banegas posed a danger to anyone in the courtroom"); *United States v. Robinson*, 318 F. App'x 280, 285 (5th Cir. 2009) ("But the district court must state the reasons for which it has chosen to shackle the defendant on the record outside of the presence of the jury or exceptional circumstances justifying shackling must be apparent on the record."). Special Agent Morales testified, for instance, that Davis had threatened witnesses in previous cases and "threatened to kill the witnesses in this case, too." Moreover, at sentencing the district judge was informed that Davis was "one of the prime suspects in the murder of Jenna Hernandez, a 16-year-old." *Cf. Deck*, 544 U.S. at 635 ("If there is an exceptional case where the

7

record itself makes clear that there are indisputably good reasons for shackling, it is not this one.").

4.

Davis next challenges the district court's imposition of a two-level enhancement pursuant to United States Sentencing Guidelines § 2B5.1(b)(2)(A) for manufacturing or producing a counterfeit obligation or possessing or having custody of or control over a counterfeiting device or materials. He further challenges the district court's enhancement of his base offense level to 15 pursuant to § 2B5.1(b)(3). Section 2B5.1(b)(2)(A) provides for a two-level increase if the defendant "manufactured or produced any counterfeit obligation or security of the United States, or possessed or had custody of or control over a counterfeiting device or materials used for counterfeiting." The commentary explains "counterfeit" means "an instrument that has been falsely made, manufactured, or altered" and includes "a genuine instrument that has been falsely altered (such as a genuine $5 bill that has been altered to appear to be a genuine $100 bill)." U.S.S.G § 2B5.1, cmt. n.1. Section 2B5.1(b)(3) provides that "[i]f subsection (b)(2)(A) applies, and the offense level determined under that subsection is less than level 15, increase to level 15." Davis contends that the district court clearly erred in applying the enhancements because there was a lack of evidence connecting him to counterfeiting money.

We review the district court's interpretation and application of the Guidelines de novo and its factual findings for clear error. *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008). A factual finding is not clearly erroneous if it "is plausible in light of the record as a whole." *United States v. Caldwell*, 448 F.3d 287, 290 (5th Cir. 2006).

On Davis's request, the district court conducted an evidentiary hearing to receive evidence pertaining to Davis's objection to the enhancements to his base offense level to level 15. Kyle Rhodes of the Aransas Pass Police Department testified that a confidential informant told him that John David Johnson, Davis's nephew, was in possession of some computer equipment that Davis had used for counterfeiting money. Rhodes confiscated the equipment from Johnson's trailer and turned it over to Agent Morales. Johnson told Rhodes that Davis gave him the equipment to hold for him (Davis), but Johnson did not tell Rhodes that Davis had used the equipment for counterfeiting—a confidential informant told Rhodes that information.

Leo Martinez of the Aransas Pass Police Department testified that Johnson told him that Davis had given him the equipment "to put it up where the police wouldn't find it or law enforcement couldn't find it." Johnson testified, however, that Davis did not give him any equipment that he said he had used for counterfeiting money; that he never had any computer equipment obtained from Davis; that he had never turned over any such equipment to Rhodes; and that he had never discussed the equipment with Martinez.

Agent Morales testified that the equipment he received from the Aransas Pass Police Department that came from Davis's nephew consisted of "an all-in-one scanner, copier, printer and a regular printer and then a CPU that didn't have a hard drive in it." He could not determine from examining the equipment whether it had been used for counterfeiting but testified that the equipment was the type used for counterfeiting.

Kimberly Longbine testified at sentencing that while Davis was living with her, she had given Davis $5 dollar bills and he emerged from his room with $100 bills. Further, she testified that although she did not see Davis printing the $100 bills, she did see him wipe the ink off of the $5 bills using

Easy-Off oven cleaner with make-up sponges. She testified that the computer equipment that was seized by the Aransas Pass Police Department was not the same computer equipment that was at her house. She had returned the printer that Davis had at her house to Wal-Mart.

After hearing the testimony of the various witnesses as well as argument from counsel, the court overruled Davis's objection to the enhancements. The court observed that there had been conflicting testimony regarding the seized computer equipment and that Longbine testified regarding different equipment than that which was seized. The court stated that its decision was based on the preponderance of the evidence and that it had weighed the evidence and the credibility of the witnesses. In response to Davis's argument that the enhancements should not apply in light of the conflicting testimony, the court summarized: "So, basically, you want me to just totally disregard [Longbine's] testimony?" The district court decided to credit the testimony connecting Davis to counterfeiting, and Davis has not shown that the district court's credibility determinations were clearly erroneous. *See United States v. Ocana*, 204 F.3d 585, 593 (5th Cir. 2000). Such "determinations in sentencing hearings are peculiarly within the province of the trier-of-fact." *United States v. Sotelo*, 97 F.3d 782, 799 (5th Cir. 1996) (internal quotation marks omitted).

Accordingly, the district court's determination that Davis had manufactured or produced a counterfeit obligation or possessed or had control over a counterfeiting device or materials for purposes of applying the enhancements was plausible in the light of the record as a whole and, thus, not clearly erroneous. *See Caldwell*, 448 F.3d at 290; U.S.S.G. § 2B5.1(b)(2)(A) (applying if the defendant "manufactured or produced any counterfeit obligation or security of the United States, or possessed or had custody of or control over a counterfeiting device or materials used for counterfeiting");

U.S.S.G. § 2B5.1(b)(3) (providing that "[i]f subsection (b)(2)(A) applies, and the offense level determined under that subsection is less than level 15, increase to level 15").

5.

Lastly, Davis challenges for the first time on appeal his indictment and sentence as violating the rule set forth in *Alleyne v. United States*, 133 S. Ct. 2151 (2013). *Alleyne* is inapposite because there was no statutory mandatory minimum in Davis's case. *See Alleyne*, 133 S. Ct. at 2155. Davis has shown no error, plain or otherwise. *See Puckett*, 556 U.S. at 135.

III.

For the above stated reasons, we AFFIRM.